Argued September 23; affirmed November 9, 1943

# BEACH *v.* HOLLAND ET AL.

(142 P. (2d) 990)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Verne Dusenbery,* of Portland (John H. Lewis and Crum, Dusenbery & Martin, all of Portland, on the brief) for appellant.

*Cecil H. Greene,* of Portland (Beach, Simon & Greene, of Portland, on the brief) for respondent.

## LUSK, J.

■ The evidence clearly shows, and counsel for the defendant concede in their brief, that the action of the deceased in causing her bank account to be changed to a joint account in the names of herself and the plaintiff, was taken, not to serve the convenience of the deceased, but with a donative purpose. Likewise, the defendant concedes "the possibility of so fixing a bank account that two persons shall be joint owners thereof during their mutual lives and the survivor take upon the death of the other", *Kelly v. Beers*, 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543. A very large number of cases throughout the country, as well as the statements of authoritative text writers, fully warrant this concession. See annotations in 135 A.L.R. 993, 103 A.L.R. 1140, 66 A.L.R. 881, 48 A.L.R. 189; 7 Am. Jur., Banks 304, § 431; 5 Michie, Banks and Banking 99, § 46; 5 Zollmann, Banks and Banking 238, § 3221.

■ Although numerous phases of the subject of the rights of the survivor in a joint bank account have

been presented in the ably prepared briefs of counsel, the controversy, as we view it, is finally reduced to the question whether a gift *in praesenti* of an interest in the account was actually made, or whether, as the defendant contends, there was a mere attempt on the part of Mrs. Holland to confer a benefit on her sister which was not to take effect until after the death of the former, and which amounted to nothing more than a testamentary disposition of property, ineffectual because not in compliance with the statute of wills.

It is our opinion, based upon a study of the numerous decisions cited in the briefs of counsel, as well as others, that the effect of the transaction, viewed in the light of the oral testimony, was to vest in the plaintiff a present interest, in the nature of a joint tenancy, in the deposit, which ripened into absolute ownership on the death of Mrs. Holland. We think that, since the plaintiff paid no consideration for this interest, it cannot be deemed other than a gift, but a gift effected through the instrumentality of the contract between the bank and the two sisters.

The cases upon this subject are so numerous, and so many theories have been advanced in support of the conclusions reached by the courts, that it would be impracticable and, we believe, profitless, in a judicial opinion, to attempt any comprehensive review of the decisions. The attitude of the courts towards various phases of the subject is discussed at some length in the case of *In re Edwards' Estate,* 140 Or. 431, 14 P. (2d) 274, and what was there said need not be repeated here. In addition to the references in that opinion, attention is called to the later annotations in A. L. R. above mentioned, and the article in 15 Cornell Law Quarterly at p. 96.

There are some decisions which seem to have unequivocally rejected the idea that the law of gifts has anything to do with a case of this kind. Thus, in *Deal's Adm'r. v. Merchants' and Mechanics' Savings Bank,* 120 Va. 297, 91 S. E. 135, L. R. A. 1917 C, 548, a case in which the survivor of two joint depositors gave no consideration and contributed nothing to the bank account, the court said:

> "Therefore, when the deposit in this case was made by Mrs. Deal for the joint benefit of herself and Mrs. Holland, in legal effect a loan was made by decedent and Mrs. Holland to the bank, and the bank was the debtor to them, and they creditors to the bank, to the amount of such deposit. It was a pure contractual relation, and no question of gift or trust arises in determining the rights of the parties under such a contract."

The Ohio court also has sustained the survivor's right to the deposit without regard to any question of a gift, and, even in a case where it was found that it was doubtful whether the delivery essential to constitute a completed gift was present, the contract in and of itself being held sufficient basis of the survivor's claim. *The Cleveland Trust Co. v. Scobie,* 114 Ohio St. 241, 151 N. E. 373, 48 A. L. R. 182. See *Rhorbacker, Ex'r. v. The Citizens Building Association Co.,* 138 Ohio St. 273, 34 N. E. (2d) 751, 135 A. L. R. 988.

A similar view seems at one time to have been taken in Massachusetts: *Chippendale v. North Adams Savings Bank,* 222 Mass. 499, 111 N. E. 371; *Perry v. Leveroni,* 252 Mass. 390, 147 N. E. 826. But in later decisions the Massachusetts court has, apparently, modified its views and has "made clear that the transaction rests for its efficacy upon the intention to make

a gift'', Note 11, 7 Am. Jur., Banks 308. Thus in *Goldston v. Randolph,* 293 Mass. 253, 199 N. E. 896, 103 A. L. R. 1117 (1936), the court said:

> "A present gift of an interest in the deposit would be effected on the principle of Chippendale v. North Adams Savings Bank, 222 Mass. 499, 111 N. E. 371, and cases following it, by a contract to which the bank, the deceased and the plaintiff were parties if the requisite intention on the part of the deceased existed."

See to the same effect *Castle v. Wightman,* 303 Mass. 74, 20 N. E. (2d) 436, and the comment in 48 A. L. R. 190:

> "Doubtless all that the court meant in the Chippendale and Leveroni cases was that the contract with the savings bank, by which it agreed to pay to either or the survivor, took the place of the delivery which must ordinarily accompany a gift in order to complete it."

In the Edwards case the survivor of two joint depositors, who were husband and wife, opened the account with her own money, and that was undoubtedly the reason for the statement in the opinion that "it seems evident that the wife did not obtain her rights through her husband by the process of a gift, but directly from the bank for a valuable consideration." The case is not authority for the view that, under facts such as are presented here, the law of gifts is not involved.

Although the attempt has been made to classify some of the decisions as proceeding upon the "gift" theory and others upon the "contract" theory, we think that there are few cases in which the courts have found it possible to ignore the necessity of discovering the elements of a completed gift. Thus, for example,

in *Illinois Trust & Savings Bank v. VanVlack,* 310 Ill.
185, 141 N. E. 546, the court, in sustaining the claim
of the survivor of two joint bank deposits, referred
to "the right arising from the contract" and quoted
from *New Jersey Title Guarantee and Trust Company
v. Archibald,* 91 N. J. Eq. 82, 85, 108 Atl. 434, as
follows:

> "It is argued that there was no gift from the
> donor to the donee because there was no delivery.
> But we think that is not so. The right was con-
> tractual and was vested in both depositors jointly
> and the survivor. The contract entered into by the
> bank with the mother and her daughter exhibited
> .a donative purpose from donor to donee (not one
> merely for use and convenience of the donor) and
> hence constituted a valid gift."

In *Appeal of Garland,* 126 Me. 84, 136 Atl. 459, it
is said that "the theory of a *post mortem* transfer by
contract is as clearly of the nature of a testamentary
disposition as a gift to take effect after death without
such contract." To that extent we agree with the
opinion in that case, though we are unable to agree
with the Maine court's holding that a present interest
in the nature of a joint tenancy cannot be created
through a transaction of the kind under consideration
provided the requisite donative intent is shown.

██ The requisites of a valid gift *inter vivos* are
well established. There must be delivery of the thing
given with a donative intent and complete stripping of
the donor of dominion over it. *Lay v. Proctor,* 147 Or.
545, 34 P. (2d) 331; *Allen v. Hendrick,* 104 Or. 202, 206
P. 733. Where the property is capable of manual deliv-
ery such delivery is essential. Where this is not the
case a symbolical delivery will suffice, as, for example,

the delivery of a key to a box in which the thing given is kept under lock and key.

■ Delivery of the passbook with donative intent no doubt constitutes delivery of a savings deposit (24 Am. Jur., Gifts 785, § 104); but it is established by numerous decisions and conceded by counsel for defendant that, where a joint bank account is created, accompanied by an agreement such as that signed by the plaintiff and the deceased in this case, retention of the passbook by the donor is not controlling as against the claim of a gift *in praesenti,* though it may be considered upon the question of whether there was a donative intent. *Battles v. The Millbury Savings Bank,* 250 Mass. 180, 145 N. E. 55; *Castle v. Wightman,* supra; *Commercial Trust Co. v. White,* 99 N. J. Eq. 119, 132 Atl. 761; *Dunn v. Houghton,* (N. J.) 51 Atl. 71; *Dyste v. Farmers' & Mechanics Savings Bank,* 179 Minn. 430, 229 N. W. 865; *Farrelly v. Emigrant Industrial Savings Bank,* 92 App. Div. 529, 87 N. Y. S. 54; *Goldston v. Randolph,* supra; *Holt v. Bayles,* 85 Utah 364, 39 P. (2d) 715; *Kennedy v. McMurray,* 169 Cal. 287, 146 P. (2d) 647, Ann. Cas. 1916 D, 515; *Illinois Trust & Savings Bank v. VanVlack,* supra; *McLeod v. Hennepin County Savings Bank,* 145 Minn. 299, 176 N. W. 987; *New Jersey Title Guarantee & Trust Co. v. Archibald,* 91 N. J. Eq. 82, 108 Atl. 434; *Perry v. Leveroni,* supra; *Sage v. Flueck,* 132 Ohio St. 377, 7 N. E. (2d) 802; *The Cleveland Trust Co. v. Scobie,* supra. See 5 Michie, Banks and Banking 105, § 46; 7 Am. Jur., Banks and Banking 305, § 431. See, also, 24 Am. Jur., Gifts 751, § 35.

We quote from some of the foregoing decisions:

"But where the donative purpose is sought to be accomplished by procuring a third party, such as a savings bank, to contract directly with the

donee, or for his benefit, the whole law as to delivery seems to be in a large degree inapplicable. There is nothing to deliver. The donation is actually effected when the donor delivers his property to the savings bank, and thereby procures the savings bank to contract with or for the benefit of the donee." *Dunn v. Houghton,* supra.

"The contract itself takes the place of the delivery ordinarily required." *Castle v. Wightman,* supra.

"Where both donor and donee have the right to make withdrawals it is immaterial whether one or the other has possession of the pass book." *Dyste v. Farmers' & Mechanics' Savings Bank,* supra.

"The mere fact of the retention of the pass-book by one of the two owners of the deposit is of no importance. If the contract entered into by the two persons concerned with the bank was effectual, as was held to be the case in Erwin v. Felter, *supra,* each of the owners of the deposit had an equal right to possession of the book, and its possession by either did not affect the right of the other. Both could not have actual manual possession of it all the time. The possession of either was for the benefit of both and was not inconsistent with the contract. * * *

"The retention of the exclusive possession and control of the pass-book and the right to draw out all the money and thus destroy the account have been held not to be decisive of the question of intent or of the joint ownership of the deposit and the final ownership of the survivor, and in the following cases the deposit of his money by one person in the name of himself and another with that other's knowledge, payable to either or the survivor, was held to give a joint interest to the other person at the time of the deposit without any further delivery and regardless of the possession of the pass-book: Kelly v. Beers, 194 N. Y. 49; Kennedy v. Kennedy, 169 Cal. 287; Blick v. Cockins,

262 Pa. 56; Negaunee Nat. Bank v. LeBeau, 195 Mich. 502; Marston v. Industrial Trust Co., 107 Atl. (R. I.) 88; McLeod v. Hennepin County Savings Bank, 145 Minn. 299.'' *Illinois Trust & Savings Bank v. VanVlack,* supra.

■ The question of relinquishment by the donor of dominion and control over the thing given is one of greater difficulty, for in a joint bank account the donor reserves a measure of control over the deposit through his power to make withdrawals. The subject of the gift, however, is not the funds on deposit in specie, but an interest therein equal to that retained by the donor. As stated in *Goldston v Randolph,* supra, ''a transfer of this nature is not a gift of the deposit as such, but rather a gift of the interest therein created by the contract.'' In the defendant's brief it is said:

> ''But since the thing given is a joint interest with the donor in a chose in action, the legal situation does not readily admit of literal compliance with the rule (as to divesting control), and so a majority of the cases hold that *joint control* of the account vested equally in the donor and donee substantially satisfies the requirement. In fact, it seems to be the only practical arrangement that is consistent with the joint rights retained by the depositor.''

The weight of authority is in accord with this concession of counsel.

■ In 7 Am. Jur., Banks 304, § 431, after calling attention to the rule of some cases that the power of the donor to destroy the beneficial character of the gift by drawing out the entire fund, causes the gift to fail, the author says:

> ''The majority of cases, however, hold that if the intention of the donor is to vest a present right

to share in the deposits constituting the joint account, such an act constitutes a gift that can be sustained. This is likewise true, and the transaction constitutes a completed gift, despite a reserved power of revocation.''

This is true notwithstanding the fact that, as in the instant case, a savings account is involved and under the rules of the bank no withdrawals are permitted except on presentation of the passbook. See *The Cleveland Trust Co. v. Scobie,* supra; *Dunn v. Houghton,* supra; *Raferty v. Reilly,* 41 R. I. 47, 102 Atl. 711; *Battles v. The Millbury Savings Bank,* supra; *Sage v. Flueck,* supra; *Kelly v. Beers,* supra; *Kennedy v. McMurray,* supra; *Goldston v. Randolph,* supra; *Illinois Trust & Savings Bank v. VanVlack,* supra; *Milan v. Boucher,* 285 Mass. 590, 189 N. E. 576; *Burns v. Nolette,* 83 N. H. 489, 144 Atl. 848, 67 A. L. R. 1051; *Dyste v. Farmers' & Mechanics' Savings Bank,* supra; *Mardis, Adm'r. v. Steen,* 293 Pa. 13, 141 Atl. 629; 5 Michie, Banks and Banking 104, § 46.

In *Burns v. Nolette,* supra, the court considered the question whether admitting another to an equal control, but without retaining a right in the donor to the funds withdrawn by the donee, is such a divesting of the donor's control as satisfies the test for a completed gift, and said:

"It seems to us that it is. The donee's present right is complete. He can draw from the account so long as funds remain. That right is what was given to him. It might subsequently prove valueless, if the donor withdrew the whole deposit. But for what it was worth it was a completed gift. No further act of the donor was required. No act of hers could defeat the right, although she might

render it of no value. On the other hand, he could destroy her reserved right by a like proceeding. The matter is well stated in a New Jersey case, not officially reported, but approved in Schippers v. Kemphes, 72 N. J. Eq. 948; New Jersey Title &c Co. v. Archibald, 91 N. J. Eq. 82, and Kaufman v. Edwards, 92 N. J. Eq. 554. 'The external form of the gift is the absolute conversion of the donor's property into a binding obligation of a third party, the performance of which according to its terms may upon certain contingencies benefit the donee. There is nothing, however, contingent about the gift. The gift is absolute. The right is vested beyond recall in the donee. It is a matter of no consequence that the right so vested may prove in the end to be of no pecuniary value.' Stevenson, V. C., in Dunn v. Houghton, 51 Atl. Rep. 71, 78.

"If the intent was to confer upon the defendant a present right to draw upon the fund, either without limitation or for and to the extent of described purposes, the transfer was valid, notwithstanding the donor retained a right to draw upon the fund at will. She thereby completely divested herself of the title transferred to the defendant. It did not take effect upon her death, and was not enlarged by that event. Such title as the defendant had, vested at the time of the entries upon the books. It was a present right and presently enjoyable. A delivery of what was not given was not essential to the completion of the gift.

"Although the decedent's right terminated at her death, the defendant's title did not date from that event. Both his title and his right of present enjoyment existed before her death to the same extent that they did afterwards. The fact that there is a retention of life benefits for the donor does not render the gift incomplete. This is true even if the reservation is such that it may exhaust the entire fund or property. Fellows v. Fellows, 69 N. H. 339."

In *Rafferty v. Reilly*, supra, it is said:

"The power to withdraw the money deposited is in the donor, but it is also in the donee; and that power in the donor is an incident of this form of gift. In Hoboken Bank v. Schwoon, 62 N. J. Eq. 503, Mr. Justice Pitney, then Vice Chancellor, said: 'The objection to this mode of making a gift is that it is testamentary in its character, and in effect a will, and therefore void under our statute. In support of this conclusion is pointed out the circumstances that the power of disposition by the donor continues during his or her lifetime. But this circumstance has not deterred the courts from giving effect to such arrangements. This has been done on two grounds—*first,* that a joint estate or interest is created with an express right of survivorship, which operates naturally and legally upon whatever of the fund remains unused at the death of the donor; and *second,* on the ground of a completed trust.' "

We hold that in the case at bar there was a completed gift *in praesenti* of an interest in the deposit, provided it can be said, under the evidence, that this was the intention with which Mrs. Holland caused the joint bank account to be opened.

When the contentions of the parties as set forth in their briefs are analyzed, this question of intention is really the only subject of serious controversy between them. None of the legal principles hereinabove announced is disputed by counsel for the defendant. But, as already stated, it is contended that the evidence of Mrs. Holland's declarations to the effect that she wished her sister to have the money in the deposit if she (Mrs. Holland) should die first, is inconsistent with the notion of a present gift.

■ If that were all the evidence we should feel bound to agree, but the signature card signed by the plaintiff and her sister cannot be ignored upon this question. Its meaning must be ascertained and given effect in the light of the circumstances. "The agreement, though executed on a form furnished by the bank for its own protection, is operative and binding between the parties", 5 Zollmann, Banks and Banking 244, § 3223. See *Sage v. Flueck,* supra, and *Kennedy v. McMurray,* supra. The provision in the contract giving to the plaintiff the right of withdrawal is evidence of the intent of the deceased to make a present gift. *McLeod v. Hennepin County Savings Bank,* supra; *Armstrong's Ex'r. v. Morris Plan Industrial Bank,* 282 Ky. 192, 138 S. W. (2d) 359. By the terms of the writing stamped on the signature card and signed by the parties it was agreed:

> "That the amount thereof (that is, of the moneys deposited) and all dividends thereon shall be *paid* by the said Portland Trust and Savings Bank to us, or either of us, or to the survivor of us" (italics ours).

■ What did Mrs. Holland mean when she thus authorized the bank to pay the moneys deposited to her sister? Either she intended this provision to be for the benefit of her sister or for her own convenience. There is no proof of the latter. All the evidence is to the effect that the joint account was created in order to bestow a benefit upon the plaintiff, and this is expressly conceded in defendant's brief. It is simply said that the declarations of Mrs. Holland to the effect that she had made provisions for her sister after the former's death demonstrates that there was no intention to vest in the plaintiff an interest in the deposit before the occurrence of that event. But, if that argu-

ment were to prevail, it would follow that the word "paid" was used in the agreement in two different senses—that it was intended to mean that the moneys might be paid to the plaintiff during Mrs. Holland's lifetime only to serve the latter's use and convenience, a sort of power of attorney; but, after Mrs. Holland's death, for the plaintiff's use and as her own property. To us this construction seems inadmissible, and in our opinion the declarations of Mrs. Holland in evidence, while putting beyond cavil the question of an intention on her part to bestow a benefaction on her sister, cannot be given any further effect than as indicating her expectation that the plaintiff would not likely find occasion during their joint lives to exercise the rights which the agreement gave her. Addressing itself to a like question in *Kelly v. Beers,* supra, the Court of Appeals of New York said:

"For the sake of the argument we might assume that the primary purpose of the mother in creating the account was to pass the money on her death to her daughter, and that she did not expect under ordinary circumstances that the daughter would draw out the money during her life any more than that she herself would draw it out; but, if we assume all of this, such assumption would simply go to the expected exercise by the daughter of her legal rights rather than to the existence itself of those rights. In short, starting with the performance by Mrs. Beers deliberately and advisedly of certain acts legally calculated and sufficient to accomplish certain purposes, and charging her not only as we must as a matter of law, but as we ought to as a matter of fact, with appreciation of the significance and consequences of what she did, we are unable to discover in this record any evidence of an intent not to effect that legal result which her acts naturally and presumptively did accomplish."

414

■ The defendant seeks to distinguish this case from others that have been cited on the ground that they deal with agreements signed by the parties in which it is recited that the account shall be "owned" by the parties "jointly with right of survivorship" or "as joint tenants with right of survivorship" or "as our joint property". Language of that character definitely determines the question of intent, but its absence is by no means conclusive as against the claim of the survivor, for, as the court said in *Kelly v. Beers,* supra:

> "It has been held so many times that courts will be controlled by the substance of a transaction, rather than by the name given to it, that it is a matter of no importance that the particular terms 'joint ownership' and 'joint account' were not used by Mrs. Beers. The controlling question for us has been, and is, whether she intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. If she did, that was sufficient, even though she did not use any particular formula in doing it."

So in *Kaufman v. Edwards,* 92 N. J. Eq. 554, 113 Atl. 598, the court considered the case of *New Jersey Title Guarantee and Trust Company v. Archibald,* supra, in which the agreement signed by the parties provided that the account and the moneys credited to it "belongs to us as joint tenants", and it was said "the explicit character of the written statement" was not material upon the point of "the legal sufficiency of the act of transfer". The court continued:

> "That written statement is merely proof that the 'donor's' intent was that the opening of the account was an act of present transfer of interest instead of a 'power of attorney.' It supplies the proof necessary to resolve the ambiguity of the

mere opening of the account alone—the proof which otherwise must needs have been sought from other sources.''

The evidence in *Kaufman v. Edwards,* supra, was that when the deceased, the mother of the claimant, opened the joint account, she said that ''she was putting it in both our names so that I could get it after she was gone, or she could get it if anything happened to me''. It was, nevertheless, held that there had been a present transfer of an interest in the deposit, and the claim of survivor was sustained.

■ Since, in our view of the evidence and the applicable principles of law, there was a completed gift of an interest in the deposit, the objection that to enforce the plaintiff's claim would be to give effect to a void testamentary disposition of property must fail. The effect of the transaction establishing the joint bank account was, as we have said, to create an estate analogous to a joint tenancy vesting in each of the parties a joint and equal interest in the chose in action, with right of survivorship. Although it was held in *Stout v. Van Zante,* 109 Or. 430, 440, 219, P. 804, 220 P. 414, that the common law doctrine of joint tenancy in personal property except in the case of trustees and executors has been abolished in this state, nothing in that decision touches the question of the right to provide by express language that two persons shall hold personal property as equal owners during their joint lives and that upon the death of one of them the other shall become the sole owner. In *Erickson v. Erickson,* 167 Or. 1, 115 P. (2d) 172, we held that such an estate could be created in real property if the intention to do so was expressed, notwithstanding the statute abolishing joint tenancy in real property.

Among the cases cited in support of that holding were two involving joint bank accounts, namely, *Burns v. Nolette,* supra, and *First National Bank of Birmingham v. Lawrence,* 212 Ala. 45, 101 So. 663. In *Stout v. Van Zante,* supra, the court, in support of the conclusion that the statute which abolishes joint tenancy in its application to real property likewise abolishes joint tenancy in its application to personal property, quoted the following language from a New York decision:

"There is certainly much force in the position that one body of law should not declare a different rule for two kinds of property, when there is nothing in the nature of either kind of property or in the nature and effect of the rule that calls for it."

Under this principle the rule of the Erickson case must be held to apply with equal force to personal, as to real, property. The great weight of authority in other jurisdictions is to the effect that estates in personal property in the nature of a joint tenancy may be created despite statutes which either abolish, or provide for a presumption against, the existence of a joint tenancy. See *Burns v. Nolette,* supra; *First National Bank of Birmingham v. Lawrence,* supra; *Mardis, Adm'r. v. Steen,* supra; *Eisenhardt v. Lowell,* 105 Colo. 417, 898 P. (2d) 1001; *Sage v. Flueck,* supra; *Malone v. Sullivan,* 136 Kan. 193, 14 P. (2d) 647, 85 A. L. R. 275.

It is true that *Webb v. Woodcock,* 134 Or. 319, 333, 334, 290 P. 751, seems to be out of harmony with the views herein expressed, but, as pointed out in the Erickson case, the authority of *Webb v. Woodcock* is greatly weakened by the decision in the Edwards case;

and the Erickson case itself, although dealing only with real property, all but overrules *Webb v. Woodcock* on that point. We think that what was said in *Webb v. Woodcock* upon the subject now under consideration can no longer be regarded as the law in this state.

The estate created is not, of course, a true or, as it is sometimes called, a technical joint tenancy in which "neither tenant can destroy the estate of the other", 7 Am. Jur., Banks 305, § 431. But it likens itself to a joint tenancy, for the transaction of a joint deposit such as that with which we are here concerned creates a joint ownership with the right of survivorship. *Sage v. Flueck,* supra. "It is not important that the interest created has no settled legal name * * * It is enough that it was intended to be created, and that it violates no rule of statute or common law." *Burns v. Nolette,* supra.

The case of *Holman v. Mays,* 154 Or. 241, 59 P. (2d) 392, cited by the defendant, is not out of harmony with this conclusion. The question there was whether the moneys in a joint bank account of husband and wife were subject to an inheritance tax on the death of the husband. The statute excepted from its provisions estates held by the entirety in either real or personal property. The claim of immunity from the tax was rejected for several reasons, among others that in Oregon an estate by the entirety in personal property cannot be created. It was said:

> "The possibility of a severance and destruction of a joint bank account by one of the depositors withdrawing the whole fund renders it incapable of conforming to the essentials of a tenancy by the entirety."

The case deals with a common law tenancy by the entirety in which husband and wife are vested *per tout et non per my,* and has no bearing on the question of the legal effect of an agreement which expressly provides for a right of survivorship in personal property.

■ Out of the practice, now extensively engaged in, of keeping money in joint bank accounts, there has grown up a considerable body of law, reflecting the view held by a majority of the courts that such arrangements, when entered into in good faith, are not opposed to any policy of the state, and that the purposes which are sought to be accomplished by them should not be set at naught by employing in too narrow and technical a spirit the legal principles which are found to be involved. Likewise, the legislatures in several of the states have taken cognizance of the subject and have enacted legislation providing in substance that the persons in whose names a joint bank account is carried are to be deemed joint owners of the fund, or creating a disputable presumption to that effect (see list of statutes in 5 Michie, Banks and Banking 100, Note 38). Oregon has no such statute applying to joint accounts in the ordinary type of bank, though provisions of that character have been made with respect to joint deposits in mutual savings banks (§ 40-2529, O. C. L. A.) and with respect to shares or share accounts in savings and loan associations (§ 41-603, O. C. L. A.). In addition, § 40-1003, O. C. L. A., authorizes a bank to pay moneys in the account to any of the joint depositors, but this provision has been held to be for the protection of the bank and not declaratory of the rights of the depositors in the fund as between themselves. *Lay v. Proctor,* supra.

The Oregon statutes, it seems to us, neither help nor hinder in the solution of the question which has been presented to us in this case, with signal ability and lawyer-like candor, by counsel for the respective parties; but leave it to be determined in the light of common law principles. A proper application of those principles to the facts leads to the conclusion, as we think, that a completed gift of an interest in the deposit was made to the plaintiff, who, as the survivor of two persons jointly vested with the title to a chose in action, became entitled, on the death of the donor, to the balance then remaining in the account.

The judgment is, therefore, affirmed.