Argued September 19; affirmed October 17, 1944

# HOLBROOK v. HENDRICKS' ESTATE
(152 P. (2d) 573)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Ernest Cole,* of Portland (H. A. Robertson, of Portland, on the brief), for appellant.

*R. N. Kavanaugh,* of Portland, for respondent.

LUSK, J.

This case presents a question in the law of joint bank deposits not heretofore directly and explicitly passed on by this court. We are called upon to deter-

mine whether or not the language of a written agreement with a savings bank, signed by both the depositors at the time the account was opened, in form providing that moneys deposited to the credit of the account shall be payable to either of the depositors or to the survivor of them, conclusively establishes and defines the title of the respective parties to the moneys in the account; or whether extrinsic evidence may be received for the purpose of showing the real transaction and the actual ownership.

The agreement in question, so far as material, reads as follows:

## "JOINT ACCOUNT
## WITH THE FIRST NATIONAL BANK
### OF PORTLAND, ORE.

"Savings Account No. 33997        Date Jan. 20, 1933

"Name Mrs. H. Holbrook or

"In opening this joint account and in consideration of the acceptance thereof by THE FIRST NATIONAL BANK OF PORTLAND, OREGON, the undersigned agrees:

"(1) That all moneys now or at any time deposited by us or either of us or for either of us with the First National Bank, Portland, Oregon, to the credit of the above account, are and shall be so deposited by us and received by it upon the following terms and conditions of repayment, namely: that the amount thereof and all dividends thereon shall be paid by the said First National Bank to us, or either of us, or to the survivor of us, or to the executors, administrators or assigns of such survivor; or upon the written order of any such person so entitled to payment, when accompanied by the Savings Pass Book issued for the above ac-

count and without reference to the original owner-ship of the moneys deposited. * * *

"JOINT ACCOUNT

"Mrs. H. Holbrook

"Pauline Hendricks"

The passbook was delivered to Pauline Hendricks when the account was opened and retained by her until her death on January 24, 1943.

The depositors, Harriet Holbrook, the claimant in this proceeding, and Pauline Hendricks, now deceased, were sisters, and the case arises on a claim of Harriet Holbrook against the administrator of the estate of her deceased sister to recover moneys withdrawn from the account by the latter during her lifetime. Over defendant's objections evidence was received tending to show that all the moneys in the joint account were the proceeds of rent of a house owned by Harriet Holbrook and collected for her by Pauline Hendricks as agent, and by the latter deposited in their joint names in the First National Bank of Portland merely as a matter of convenience to the claimant and without any intention to transfer an interest in such moneys to her deceased sister. The defendant has appealed from an adverse judgment.

In a consideration of the authorities, we may, at the outset, lay to one side cases in which the parties to a joint bank account have signed a writing declaring that they are "joint owners" or "joint tenants" of the moneys deposited in the account. Where these or words of similar import have been used, it has been held that the form of agreement conclusively establishes the right of the survivor to the balance in the account and that parol evidence may not be admitted for the purpose of showing that one of the parties had in

fact no interest in the fund and that the transaction was resorted to merely to serve the convenience of the true owner. *Matthew v. Moncrief,* 77 App. (D. C.) 221, 135 Fed. (2d) 645, 149 A. L. R. 856 (with annotation at p. 862) ; *Kennedy v. McMurray,* 169 Cal. 287, 146 P. 647, Ann. Cas. 1916D, 515; *Estate of Fritz,* 130 Cal. App. 725, 20 P. (2d) 361. *Kennedy v. McMurray* was decided without reference to a California statute, in effect at the time, which provided, among other things, that a deposit made by a person in the name of such depositor and another person, in form to be paid to either or the survivor, or survivors of them, should become the property of such persons as joint tenants; while the decision in the case of *Estate of Fritz,* supra, was based both upon the common law and the statute.

There would seem to be a difference between the legal effect of such an agreement and one which contains no express words of joint ownership. We so suggested in *Beach v. Holland,* 172 Or. 396, 414, 142 P. (2d) 990, 149 A. L. R. 866, and *Manning v. United States National Bank,* 174 Or. 118, 148 P. (2d) 255. Nevertheless, some courts have held that even agreements so explicit are not conclusive of the question of ownership of the moneys in the account, but that extrinsic evidence may be received to determine the question of donative intent. In *Gorman v. Gorman,* 87 Md. 338, 39 Atl. 1038, the depositors declared they were "joint owners". The court said that these words were not used "in their definite legal sense", and, since the circumstances indicated no intention to make a gift, that the survivor claiming the fund as donee was not entitled to recover. In *Trenton Saving Fund Society v. Byrnes,* 110 N. J. Eq. 617, 160 Atl. 831, an agreement reading in part "this account and all money to be

credited to it belongs to us as joint tenants'' was said to be *prima facie* evidence of donative intent, and evidence to overcome its effect was held admissible. In *McLeod v. Hennepin County Savings Bank,* 145 Minn. 299, 176 N. W. 987, the agreement contained this language, ''this account is our joint property'', and the court considered extrinsic evidence in passing upon the question of whether there had been an executed gift. *Ball v. Forbes,* 314 Mass. 200, 49 N. E. (2d) 898, decided in 1943, involved several accounts, one containing the language ''as joint tenants—either to draw —survivor to take all'', the others reading ''payable to either or the survivor''. In a case tried to a jury where the right of the survivor was in question, instructions given by the court which attributed to the mere form of the contracts a conclusiveness as between the parties (other than the bank), were held erroneous. The question whether a present gift was made was said to be one of the fact for the jury to decide on all the evidence, and no distinction was recognized between the various forms of contract. In all the foregoing cases both parties to the joint accounts signed the deposit agreements. See *McKenna v. McKenna,* 260 Mass. 481, 157 N. E. 517; *Armstrong's Ex'r. v. Morris Plan Industrial Bank,* 282 Ky. 192, 138 S. W. (2d) 359; *Commercial Trust Co. v. White,* 99 N. J. Eq. 119, 126, 132 Atl. 761, affirmed 100 N. J. Eq. 561, 135 Atl. 916.

There are other cases involving contracts containing words of joint ownership in which, while the right of the survivor to the balance in the account was determined entirely on the basis of the language used in the agreement, no attempt seems to have been made to introduce extrinsic evidence to explain the transaction,

and the admissibility of such evidence was not dis·
cussed. See *Mader v. Stemler,* 319 Pa. 374, 179 Atl.
719; *Commercial Trust Co. v. White,* supra; *Holt v.
Bayles,* 85 Utah 364, 39 P. (2d) 715; *Rockefeller v. Dav-
enport,* 277 Mass. 105, 177 N. E. 856. It should be ob-
served that in *Trenton Saving Fund Society v. Byrnes,*
supra, the court, in citing *Commercial Trust Co. v.
White,* supra, said that the latter case was not authority
against the admission of extrinsic evidence.

In some states the problem has been settled by legis-
lation. The first statute on the subject was enacted
in New York, and has been construed by the Court of
Appeals of that state as follows:

> "When a bank account is opened in the form
> prescribed by statute (Banking Law, § 249, subd.
> 3), (i. e., a deposit "made by any person in the
> names of such depositor and another person and in
> form to be paid to either or the survivor of them")
> a presumption at once arises that the interest of
> the depositors is that of joint tenants. Upon the
> death of one of the depositors, this presumption be-
> comes conclusive in favor of the survivor in respect
> of any moneys then left in the account. It continues
> to be a mere presumption in respect of any moneys
> previously withdrawn." *Marrow v. Moskowitz,* 255
> N. Y. 219, 221, 174 N. E. 460.

Similar statutes adopted in California, Michigan
and Missouri have received a like construction: *Am-
bruster v. Ambruster,* 326 Mo. 51, 31 S. W. (2d) 28, 77
A. L. R. 782; *Esling v. City National Bank & Trust Co.,*
278 Mich. 571, 270 N. W. 791; *Wallace v. Riley,* 23 Cal.
App. (2d) 654, 74 P. (2d) 807 (hearing denied by
Supreme Court); see, also, *In re Kellogg,* 41 Cal. App.
(2d) 833, 107 P. (2d) 964, and California cases there

cited; *Jorgensen v. Dahlstrom,* 53 Cal. App. (2d) 322, 127 P. (2d) 551.

1. We are not dealing in this case with a form of deposit agreement in which the parties to a joint account have expressly declared that they are "joint owners" or "joint tenants", or that the moneys credited to the account "belong to" them jointly, and we have no occasion to express an opinion as to the effect of the use of such expressions. Nor is there any statute in this state which fixes the rights, as between themselves, of joint depositors in a savings bank account. The deposit here was made subject to the condition, assented to in writing by both depositors, "that the amount thereof and all dividends thereon shall be paid by the said First National Bank to us, or either of us, or to the survivor of us, or to the executors, administrators or assigns of such survivor"; and the question is whether this form of agreement is so clear, unambiguous and conclusive as to shut off all inquiry as to the real ownership of the money and, by the mere force of its provisions, establish in each of the joint depositors an interest in the fund.

We think that an affirmative answer to that question would be contrary to the better reasoning and the decided weight of authority. The most that can be said is that the words of this deposit agreement are some evidence of the intention on the part of Harriet Holbrook to transfer an interest in the account to her sister. Speaking of a similar agreement in *Beach v. Holland,* supra, 172 Or. at p. 412, we said "The provision in the contract giving to the plaintiff the right of withdrawal is evidence of the intent of the deceased to make a present gift"; though even upon that proposition the courts are not in entire agreement.

Thus, in *Flanagan v. Nash,* 185 Pa. St. 41, 39 Atl. 818, a provision giving the survivor the right to draw was said to confer that right and nothing more. "There is nothing to show", the court said, "that if the defendant withdrew the money he could keep it as his own." In *Denigan v. Hibernia Savings and Loan Society,* 127 Cal. 137, 59 P. 389, where the joint depositors gave written directions to the bank to pay to the individual order of either, the court said:

"The form in which the deposit was made is entirely consistent with a desire on the part of the wife to give to her husband authority to withdraw money from the bank from time to time as she might need it, and it should not be held that she intended to part with her title thereto by reason of an ambiguous phrase, which is quite consistent with a contrary purpose."

In *Green v. Comer,* (Okla.), 141 P. (2d) 258, 262, the court said of the provision for withdrawal by the survivor:

"However, the more general and we believe the better view is that such additional language is a circumstance to be considered in conjunction with the relationship of the parties and other circumstances in the case. Its weight as a circumstance may vary greatly with the different relationship between the co-depositors. It may correspond to the arrangement between the parties or it may be solely for the convenience and protection of the bank and as such constitute an agreement between the depositors and the bank as distinguished from a contract between the depositors. Of course, different considerations apply to a contract strictly between the depositors and a form prepared by the bank may be used by depositors as a means of carrying out their arrangements."

Again, in *Taylor v. Coriell,* 66 N. J. Eq. 262, 57 Atl. 810, the court quoted the following from *Skillman v. Wiegand,* 9 Dick. Ch. Rep. 198:

"In view of the well-known practice of savings banks to pay money on the presentation by the de- positor in person of his or her pass-book, the motive of convenience in drawing money without personal attendance becomes at once prominent and a not uncommon purpose in the placing of moneys in bank to joint account."

In *Kelly v. Beers,* 194 N. Y. 49, 55, 86 N. E. 980, 128 Am. St. Rep. 543, the court said that it was so apparent that it must be concluded that the account on its face ("payable to Kate V. Beers or Sarah E. Kelly, her daughter, or the survivor of them") "imports such joint ownership by appellant and deceased with final sole ownership by survivorship"; but then referred to New York cases holding that "the mere form of the account in such a case as this will not be regarded as sufficiently establishing the intent of the person making it to create a trust in behalf of another or to give to such another joint interest in or ownership of the deposit." See, also, 5 Zollman, Banks and Banking (Perm. Ed.) 239, § 3221.

■ Notwithstanding the authorities to the contrary, we adhere to the view expressed in *Beach v. Holland, supra,* that the agreement itself is some evidence of an intention on the part of the owner of the money de- posited to make a gift of a joint interest in the account, and that if nothing more were shown than the deposit agreement itself, that would suffice to make out a *prima facie* case in favor of one asserting such an interest. See *Raferty v. Reilly,* 41 R. I. 47, 102 Atl. 711. But, whether that theory be adopted, or the view be taken that no presumption or inference whatever is to be

drawn from the agreement, in any case, we think, for the reasons stated in the opinions of the courts from which we have quoted, that the instrument is ambiguous, and that, when ownership of the fund is called in question, resort may be had to extrinsic evidence in order to determine the controversy. That is the necessary implication of our decision in *Beach v. Holland,* supra. The deposit agreement in that case was in the identical language of the agreement in the instant case. The survivor of the two joint depositors claimed to be the owner of the balance in the account, and we held that evidence of the relationship between the claimant and her deceased sister, with whose moneys the account was opened, and of statements made by the deceased sister prior to opening the account, at the time of the transaction, and subsequently, sufficiently indicated a donative intent, and that the effect of the transaction was to vest in the donee a present joint and equal interest in the deposit, and, on the death of the donor, title to the balance then remaining in the account. We held that in order for the survivor to recover it was necessary to show a donative intent and the present transfer of an interest in the account, and cited and relied upon decisions of other courts in which parol evidence was deemed material to that issue. It is true that in *Beach v. Holland* the evidence came in without objection, but we neither had nor expressed any doubt of its propriety; but, on the contrary, considered the effect that might be properly given to such evidence in connection with the terms of the deposit agreement and all the attendant circumstances.

■ We think the fair inference arising from the power given to each of the parties to draw on the ac-

count—expressed in the present instance by the words "shall be paid"—is that an interest in the fund was created by the original owner of the moneys deposited in favor of her co-depositor, but that this inference "is a weak one and readily yields to parol proof of the real intention of the parties." *Ambruster v. Ambruster,* supra. The difficult question of the right to follow funds withdrawn during the lifetime of both parties, where the fact of a gift has been established, discussed in the case just cited and in the annotation thereto at 77 A. L. R. 799, is not here presented.

The right to introduce extrinsic evidence in order to determine the intent of the parties and the realities of the transaction follows, we think, from the dubious character of the deposit agreement, and is sustained, as we have said, by the weight of authority. If, as some courts have held, such evidence may be received to overcome the apparent meaning of agreements in which the parties declare themselves joint owners or joint tenants, for a much stronger reason should that be the rule where the agreement merely provides that the moneys deposited to the credit of the account shall be payable to either of the joint depositors or to the survivor of them. And by most of the courts that have dealt with the question in cases involving agreements of the latter type, that has been the governing principle. In not all the cases taking this view does it definitely appear that both parties signed the deposit agreement, but the rationale of the decisions, namely, the want of conclusiveness in the words of the agreement itself, warrants the statement, we think, that the failure of one of the parties to sign the agreement was not in any of these cases deemed a decisive factor. See, *Raferty v. Reilly,* supra; *Commercial Trust Co. v. White,* supra;

*Rauhut v. Reinhart,* 22 Del. Ch. 431, 180 Atl. 913; *New Hampshire Savings Bank v. McMullen,* 88 N. H. 123, 185 Atl. 158; *Peoples Bank of Denton v. Turner,* 169 Md. 430, 182 Atl. 314, 103 A. L. R. 490; *Taylor v. Henry,* 48 Md. 550, 30 Am. Rep. 486; *Goldston v. Randolph,* 293 Mass. 253, 199 N. E. 896, 103 A. L. R. 1117; *Bedirian v. Zorian,* 287 Mass. 191, 191 N. E. 448; *Burns v. Plaza Bank of Commerce,* (Mo. App.) 141 S. W. (2d) 209; *Lester v. Guenther,* 134 N. J. Eq. 53, 33 Atl. (2d) 815; *Kaufman v. Edwards,* 92 N. J. Eq. 554, 113 Atl. 598; and cases already cited upon the ambiguous character of the deposit agreement. See, also, 5 Michie, Banks and Banking, 102, § 46.

A different opinion has been expressed in *Illinois Trust & Savings Bank v. Van Vlack,* 310 Ill. 185, 141 N. E. 546; *Sage v. Flueck,* 132 Oh. St. 377, 7 N. E. (2d) 802; *Rhorbacker Ex'r v. Citizens Bldg. Ass'n Co.,* 138 Oh. St. 273, 34 N. E. (2d) 751, 135 A. L. R. 988; *Cleveland Trust Co. v. Scobie,* 114 Oh. St. 241, 151 N. E. 373, 48 A. L. R. 182; and, possibly, in *Deal's Adm'r. v. Merchants and Mechanics Savings Bank,* 120 Va. 297, 298, 91 S. E. 135, L. R. A. 1917C, 548. In these cases the courts held that, irrespective of any question of a gift *in praesenti,* the contract itself operated to transfer a joint interest in the account to the depositors, a theory which, in *Beach v. Holland,* we declined to follow.

While there is language in the opinion in the case of *In re Edwards' Estate,* 140 Or. 431, 14 P. (2d) 274, which seems to lend support to the defendant's position, the decision itself, we think, does not. It was a case of a joint account between husband and wife, which the wife claimed as survivor upon her husband's decease. Evidence that the account was opened with moneys belonging to the wife and as to the respective amounts

deposited by each of the parties was considered, and the court, placing itself in the position of the parties, concluded that the word "payable" in the contract meant "that the balance should belong to the survivor and should be delivered to him or her as the sum to which he or she was entitled": 140 Or. 448. Since no attempt was made to show a different understanding, the case cannot be considered authority against the admission of extrinsic evidence. The court, in fact, recognized that the words "pay" and "payable" are equivocal in nature.

It remains only to say that uncontradicted evidence, sufficiently corroborated, shows that the moneys deposited in this account were all the proceeds of rent of a house in the city of Portland owned by the claimant; that the deceased collected these rents as the agent of the claimant, and not otherwise, and deposited them in the account pursuant to an arrangement between the parties made for the convenience of the claimant, who lived and was engaged in business some distance from the city of Portland; that there was no intention on the part of the claimant to transfer any interest in the deposit to her sister, and the latter never acquired an interest therein, but withdrew and misappropriated the larger part of the moneys so deposited without the claimant's knowledge. Complaint is made by the defendant of the amount of the judgment; but there is no assignment of error in that regard, nor was the question presented to the trial court by motion, request for findings, or otherwise. The point, therefore, cannot be considered by us. We think, moreover, that if any one has the right to complain as to the amount awarded, it is the claimant, for the court held that the statute of limitations barred her right of

recovery as to sums withdrawn more than six years before the commencement of the action. This we think was error, for the deceased was in the position of a trustee for her sister, who knew nothing of the misappropriations of the moneys until after the former's death; and the statute would not begin to run until after a demand and refusal to pay. See 34 Am. Jur., Limitation of Actions 145, § 180. The claimant, however, has not appealed, and we are unable, therefore, to correct the error.

■ Nor do we find any merit in the contention that the recovery is not based on the claim as presented. The essential facts which would support a judgment are stated in the claim; and the fact that counsel for the claimant, or the court below, may have entertained an erroneous legal theory as to the ground of liability is immaterial.

The judgment is affirmed.