Argued June 10, affirmed as modified July 1, 1976

# ALLEN, *Respondent,*
## *v.*
# ALLEN, *Appellant.*

551 P2d 459

*Marvin S. Nepom,* Portland, argued the cause and filed the brief for appellant.

No appearance contra.

Before Denecke, Chief Justice, and McAllister, Tongue and Howell, Justices.

TONGUE, J.

## TONGUE, J.

This is an action for conversion of money from a joint checking account. The trial court, sitting without a jury, found in favor of plaintiff and entered a judgment for $8,000 general damages and $500 punitive damages. Defendant appeals.

The primary issues are whether there was substantial evidence to support the findings and conclusion by the trial court and whether those findings and conclusions support the judgment.

■ Because of direct conflicts in the testimony we must bear in mind that in determining whether there was sufficient evidence to support the findings of the trial court in favor of the plaintiff all conflicts in the testimony must be resolved in his favor and he is also entitled to the benefit of all inferences which may be reasonably drawn from such evidence. *Cronn v. Fisher,* 245 Or 407, 416, 422 P2d 276 (1966).

*The facts.*

Plaintiff, the father of defendant, lived in Texas until his wife died. In the course of the probate of her estate the sum of $5,610 was distributed to plaintiff and was deposited in a Texas bank in a joint account with his son, the defendant. Also deposited in that account was $1,445, representing a part of the distribution of the estate belonging to his son, as one of the heirs of the wife. Plaintiff then came to Portland, Oregon, where his son lived. His son, the defendant, was a self-styled "landlord" and a real estate broker.

On February 28, 1974, the entire balance of the Texas bank account, the sum of $8,079, was transferred to a joint checking account at the Security Bank of Oregon. Of that amount, $1,445 "represented" defendant's funds and the balance was plaintiff's funds.

At that time plaintiff and defendant signed a printed card with an agreement as follows, among other things:

"(2) That * * * all deposits entered in or credited to this account shall be paid by the Bank to or upon the order of either of the undersigned or the survivor, without reference to the original ownership of the moneys deposited * * *."

"(3) That each of the undersigned shall be and is authorized to endorse any and all checks, drafts or other items payable to the other and to deposit the same to this account and to do and to perform such other and further acts and things in connection with or pertaining to this account as might or could be done by all of the undersigned provided, however, that if any check, order, draft or other instrument be issued by one of the undersigned, payment thereof may not be countermanded by the other * * *."

"(4) That without the consent of the other, either of the undersigned may appropriate funds deposited to this account by withdrawing the same or by transferring such funds, in whole or in part, to his individual account or in payment of his individual obligations or otherwise, and that all interest of the other in such funds shall thereby be divested."

Plaintiff admitted his signature on that card, but testified that he was sick when he signed. It does not appear that there was any other agreement at that time between plaintiff and defendant relating to the ownership of the funds in that account or the right to withdraw such funds.

Defendant testified that the preceding Texas account was also a "joint account" and that when it was opened in 1973 "I explained to him [the plaintiff] that in case anything should happen to him, that my signature needed to be on the card." Defendant also testified that when the Texas account was opened plaintiff then said that his son was "taking over" and was "going to handle everything."

The effect of plaintiff's testimony, however, was to deny such a statement. Plaintiff also testified that

[ 474 ]

before the account was opened in Oregon, he told defendant that he wanted it to be "in my name," and "not a joint account" and that when the account was opened he "deem[ed] it to be [his] account."

On February 28, 1974, shortly after that account was opened, defendant wrote a check for $7,000 on that account. He testified that before doing so he talked with his father about some apartments that he had "found" and that his father said "go ahead, take whatever you need"; that he then wrote the check for $7,000 and told his father that it was for a down payment on the apartments. Defendant's wife testified to the same effect. Defendant also testified that he believed that "this $7,000 used as a down payment for the purchase of the apartment house was a gift from [his] father to [him]."

Plaintiff testified, however, that he had no knowledge of the $7,000 check until "a month or so" later, after it had been cashed; that he then asked defendant "what is it for?"; that defendant then couldn't "explain that," except to say that he had opened a savings account "for me"; that in the course of that discussion defendant "got pretty rough about it," and that plaintiff then said "Well, if that's the way it is, you have written it, I haven't. I didn't authorize it."

The apartment house for which that $7,000 check was a down payment was purchased by defendant for $80,000 under a contract naming defendant and his wife as purchasers.

On August 27, 1974, a second check for $1,000 was written on the account. That check was written by plaintiff. Again defendant testified that he first talked to his father about buying "a piece of property," saying that "I have 1,000. If you will let me have 1,000, I will buy that piece of property, * * *" and that "he agreed to it * * *" and did not "object to [his] use of those funds." He also testified that he considered the $1,000 to be a gift from his father.

Plaintiff agreed that his son had discussed that purchase with him, but testified that he wrote that $1,000 check because he was told by defendant that "I'll put in 2,000, you put in 1,000 and we'll buy it, and we'll own it" and that he thought that his "name would appear on the piece of property that was being purchased." Again, however, defendant bought that property in the name of himself and his wife.

Additional testimony was also offered relating to other checks drawn by defendant on the account and other transactions between the parties, including testimony by an independent witness that plaintiff and his son, the defendant, had "trouble" in "fighting over money" and that "His dad was accusing him of taking his money." There is no need to review such evidence, however, because the decision by the trial court was based upon the two checks for $7,000 and $1,000, totaling the amount of the judgment for $8,000. It also appears, however, that in addition to the original amount of $8,079 deposited in the account when it was opened, additional deposits were made by the plaintiff of funds belonging to him in a total amount of $2,241; and that none of such deposits were funds belonging to the defendant.

*The findings and conclusions by the trial court: Defendant's contentions on this appeal.*

After considering this evidence the trial court held that:

"Taken altogether and coupled with the court's observations as to the demeanor and credibility of the parties as witnesses upon trial, I find that whatever presumption or inference might arise from the creation of the joint account, the uncontradicted evidence shows that defendant did not deal with the monies as though there were a gift *in praesenti,* but instead, sought plaintiff's permission to use the sum in question, leaving me to conclude that both parties recognized that these monies were plaintiff's.

"With this conclusion as background, I am more impressed with plaintiff's story that he did not authorize

defendant to use the $7,000.00 for any purpose whatsoever and his story that the $1,000.00 was to be used for the purchase by plaintiff and defendant, jointly, of an interest in the second property. When defendant used the plaintiff's $1,000.00 for a different purpose, he converted that property."

Defendant contends on this appeal that the agreement signed by the parties at the time of opening the joint checking account in Oregon, though on a form furnished by the bank for its own protection, is nevertheless binding on the parties (citing *Beach v. Holland,* 172 Or 396, 418, 142 P2d 990 (1943)); that in the absence of fraud (which was not alleged or proved) "parol evidence cannot be used to change, vary or contradict the terms" of that agreement, and that "where the evidence was uncontradicted" that $1,445 of the money deposited in the account belonged to defendant, there was "no competent substantial evidence" to support the conclusion of the trial court that both parties recognized the joint account moneys were plaintiffs.

*The joint account.*

The question presented for decision in *Beach v. Holland, supra,* was whether the provision in an agreement made upon opening a joint savings account which provided that either party might withdraw money from the account was sufficient evidence to support a finding of an intent by the deceased party to such an agreement to make a gift *at that time* to the other party of an interest in moneys previously owned by the decedent and deposited in that account (i.e., a completed gift *in praesenti* of an interest in the deposit), as distinguished from a gift in anticipation of death, payable to the survivor (i.e., a *post-mortem* transfer). This court held in *Beach* (at 412) that:

"* * * The provision in the contract giving to the plaintiff the right of withdrawal is *evidence* of the intent of the deceased to make a present gift. * * *" (Emphasis added)

[ 477 ]

and that

"All the evidence" was to the same effect in that case.

In this case, however, there was evidence that the preceding bank account in Texas was opened as a joint account "in case anything should happen" to plaintiff; that plaintiff originally wanted the Oregon account to be "in my name," rather than a joint account, and later "deem[ed] it to be [his] account" and, consistent with that intent, objected to the withdrawal of the $7,000 by defendant as soon as he learned of it. In addition, defendant testified that before writing that check he first consulted plaintiff and secured his permission to do so, which would not have been necessary if the parties had previously intended to confer upon defendant the right to make such a withdrawal. Defendant also testified that he believed that "this $7,000" was "a gift from [his] father."

■ We hold that such evidence, if believed by the trier of the facts, was sufficient to support a finding that at the time the joint account was opened in Oregon both parties understood and intended that the money deposited in that account from funds originally belonging to plaintiff still belonged to him and that there was no intent to transfer an interest in that money to defendant at that time (as distinguished from the possible intent at that time to transfer that interest to defendant in the event of plaintiff's death). This result is also consistent with our more recent decisions in *Holbrook v. Hendricks' Estate,* 175 Or 159, 168, 152 P2d 573 (1944), and *Greenwood v. Beeson,* 253 Or 318, 454 P2d 633 (1969).

■ We do not agree with defendant's contention that such evidence could not properly be considered because it violated the parol evidence rule, ORS 41.740. We expressly held in *Holbrook v. Hendricks' Estate, supra* at 169, under somewhat similar facts, that despite the signing of a written agreement upon the opening of a

joint bank account, parol evidence was admissible upon the issue whether there was a "donative intent" at that time.

■■ Furthermore, that rule only bars evidence of oral understandings and agreements made prior to or at the time of a written agreement and does not bar evidence of subsequent agreements or conduct by the parties. *Davis v. Davis,* 247 Or 352, 357-58, 429 P2d 808 (1967). The testimony in question all related to such subsequent conduct except for plaintiff's testimony of his intent at the time of opening the account. That testimony (as well as the remaining testimony) was received without objection. It is true, as defendant contends, that the parol evidence rule is one of substantive law, so as not to require objection to such evidence at the time it is offered. Nevertheless, it is also established that reliance on the parol evidence rule cannot be raised for the first time on appeal, but must be claimed at some time during the trial of the case in order that the trial court may consider its application to the evidence. See Annot., 92 ALR 810, 812-19 (1934). We find nothing in the record of this case to indicate that defendant relied upon the parol evidence rule at any time during the trial of this case or at any time prior to the submission of his brief on this appeal.

*The two checks.*

■ The trier of the facts was also, in our opinion, entitled to find from such evidence that although defendant admitted, in effect, that he had no right at that time to withdraw the $7,000 for his own use without the consent of his father, he did not actually secure such consent, in view of plaintiff's testimony that he did not learn of that check until later and then objected to it, which the trial court was also entitled to believe. Based upon that testimony, the trial court was entitled to find and conclude that when defendant used the $7,000 to purchase property which he took in his own name, and that of his wife, he converted funds belonging to the plaintiff.

Because, however, it is conceded that of the $8,079 deposited in the account at that time, $1,445 belonged to defendant, it follows that the amount of money in the account and belonging to plaintiff at the time of the $7,000 check was the sum of $6,634 and that this was the amount of plaintiff's funds which were converted by defendant when he drew that check.

■ The subsequent check for $1,000 presents somewhat different problems. First of all, it is to be noted that the $1,000 check was not signed by defendant, but was a check signed by plaintiff, payable to defendant. The further problem is whether, at the time of that check, there were funds in the account belonging to plaintiff in an amount in excess of the $1,000 check.

As to the first of these problems, and as previously noted, plaintiff testified that he signed this check at the request of defendant and with the understanding that defendant would contribute $2,000 and use the money as a down payment for the purchase of property to be held in the names of both plaintiff and defendant. Instead, defendant took the contract of sale in the name of himself and his wife alone.

As to the second of these problems, it is to be noted that between the opening of the account on February 28, 1974, and the date of the $1,000 check on August 27, 1974, plaintiff had deposited additional funds in an amount in excess of $2,000, all of which admittedly belonged to him.

It is also significant to note that at the time of trial defendant made no contention that any portion of the money involved in either the $1,000 check or the $7,000 check was money previously belonging to him, but testified instead that both of these checks represented "gifts" to him from his father. From this testimony the finder of the facts could reasonably infer that defendant would not have so testified unless the money which was the subject of these "gifts," i.e., these two checks, was money which previously belonged to his father, the plaintiff.

[ 480 ]

Finally, it is to be noted that at the time of trial counsel for defendant made no contention that defendant was the owner of funds in the joint account of such an amount that some or all of the funds involved in either the $7,000 or the $1,000 check were funds belonging to the defendant. Instead, defendant's counsel relied solely upon the contention that under the terms of the agreement as signed on the joint checking account "card," defendant could not be liable for conversion of such funds because he had the right to withdraw funds from that account.

Under this record we hold that there was sufficient evidence to support findings and conclusions by the trial court that defendant converted to his use $1,000 of funds belonging to plaintiff, as represented by the check in that amount, as well as the $6,634 in funds belonging to plaintiff and included in the check for $7,000.

*Punitive damages.*

■ Finally, defendant contends that the evidence was insufficient to support an award of punitive damages in any amount. We believe, however, that there was substantial evidence to support a finding by the trial court, if it believed that evidence, as it apparently did, that the check for $7,000 was drawn by defendant without prior consultation with plaintiff; that the money was then used by defendant to purchase property put in the name of himself and his wife and that he then lied in claiming that he had previously consulted plaintiff and that the $7,000 represented a "gift" from plaintiff. We also believe that there was substantial evidence from which the trial court could properly find that defendant procured the $1,000 check from his father upon the representation that it would be used to purchase property in the name of both plaintiff and defendant and that he then used the money to purchase property in the name of himself and his wife alone. We hold that such conduct by the defendant was a "sufficiently aggravated violation of

societal interests" to justify an award of punitive damages under the rule as previously stated in *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425-27, 435 P2d 306 (1967), and in subsequent cases.

For all of these reasons, the judgment of the trial court is affirmed, but modified as a result of the fact that we must recognize, for reasons previously stated, that at the time of the $7,000 check, defendant was the owner of funds in the account in the sum of $1,445. This court is authorized by Article VII, § 3 of the Oregon Constitution to "change" judgments as entered by trial courts in cases in which this court "shall be of the opinion that it can determine what judgment should have been entered in the court below." We believe that this is such a case. See *Oregon Engineering Co. v. West Linn,* 94 Or 234, 245, 185 P 750 (1919), and *Weatherspoon v. Stackland,* 127 Or 450, 454, 271 P 741 (1928).

Accordingly, this case is remanded to the trial court with instructions to enter judgment in favor of plaintiff and against defendant in the sum of $7,634 in general damages and $500 punitive damages.

Affirmed as modified.