SMILEY, *Respondent,*

*v.*

KING et al, *Appellants.*

(No. 75-5680, SC 24647)

564 P2d 1348

Timothy J. Harold, of Harms & Harold, Springfield, argued the cause for appellant Marylon King. With him on the briefs was Joseph J. Leahy, Springfield.

Lynn Moore, Springfield, argued the cause for respondent. With him on the brief were Moore, Wurtz & Logan, Springfield.

Before Denecke, Chief Justice, and Tongue, Linde and Campbell, Justices.

DENECKE, C. J.

## DENECKE, C. J.

This case arises out of a dispute between a father and his daughter over the ownership of real property and of two certificates of deposit. The trial court decreed that plaintiff, Clarence Smiley, was the owner of all of the property in dispute. His daughter, defendant Marylon King, appeals.

In 1973 Mr. Smiley, recently widowed, decided to put his affairs in order. He consulted with his daughter, Mrs. King, and with an attorney, and then took several steps to facilitate, as he thought, the disposition of his property upon his death. He executed a bargain and sale deed, absolute on its face, conveying to Mrs. King all the real estate he owned, —his home and a nearby rental house. He invested his savings in two certificates of deposit. Both of the certificates were issued in his name and that of Mrs. King as trustees. One of the certificates named his other two daughters, Mildred Robinson and Alice Comfort, as beneficiaries. The other named Alice Comfort as beneficiary.

Plaintiff also executed a will designating Mrs. King as his personal representative and directing that his estate, upon his death, be divided equally among his three daughters. The will recites the concurrent execution of the deed "conveying to my daughter, MARYLON KING, all of the real property which I own." It also, however, makes provision for the distribution of the real property to Mrs. King and Mrs. Robinson after his death and appears to direct that the real property be taken into account in determining the net value of the "residual estate." The will also contains the following provision:

> "It is my intention in establishing joint ownership in my personal and real property, to serve my own convenience and to provide ready access to my daughter, MARYLON, in making a division of my estate. It is not intended that she shall receive more than her normal one-third (⅓rd) interest * * *."

Mrs. King read the will at the time of its execution,

and also participated, with her father, in discussions with the attorney who prepared the will and the deed. Mr. Smiley delivered the deed to her and she placed it, together with the certificates of deposit, in her safety deposit box. After these things were done, Mr. Smiley continued to live in his home, to collect the rental income from the other house, and to receive the interest income from the certificates of deposit.

About a year later Mrs. King recorded the deed. She also, shortly thereafter, refused to deliver the certificates of deposit to her father when he asked for them. These things happened not long after Mrs. King learned that her father intended to remarry. He has since done so.

Mr. Smiley brought suit, asking that the court order Mrs. King to reconvey the real property, and to deliver the certificates of deposit to him. The trial court granted that relief, and Mrs. King appeals. We review de novo. ORS 19.125(3).

We will consider first the status of the real property. The parties agree that the deed, as executed, was in the form directed by Mr. Smiley, and that it was delivered to Mrs. King.[1] They also agree that the delivery was accompanied by an oral understanding. The present disagreement is about the terms of that understanding.

Mr. Smiley testified that the purpose of the deed was to avoid probate, and that Mrs. King was aware of that purpose. He further testified that the deed was not to be recorded during his lifetime, and that it was to be returned to him if he asked for it.

Mrs. King testified that she understood the deed was not to be recorded, but that there was no agreement that it was to be returned to Mr. Smiley on demand. Rather, she testified, it was agreed that Mr.

---

[1] At oral argument plaintiff argued that the deed was not delivered to Mrs. King; however, plaintiff expressly alleged in his complaint that the deed was delivered, and this was not an issue in the trial court.

Smiley was to have a life estate in the property, or at least the right to possession during his lifetime, in spite of the absolute form of the deed. On his death, Mrs. King was to distribute the property according to his wishes. The reason for not recording the deed, according to her testimony, was that her father did not want to give up the property tax relief available to property owners of his age.

The trial court apparently believed Mrs. King's version of the oral agreement, and made the following finding of fact:

"By certain, definite and convincing evidence, a trust arose at the time of the conveyance of the real property from Plaintiff to Defendant, Marylon King, it always being contemplated by the Plaintiff and Mrs. King that Mrs. King was to act as trustee for the benefit of herself and her sisters."

The trial court also found that one of the terms of the performance of that trust was that the deed would not be recorded during Mr. Smiley's lifetime, "so that he would be assured of a legal right to lifetime possession of the premises and reduced real property taxes." Because Mrs. King failed to perform this portion of her trust duties, the trial court concluded that a constructive trust should be imposed and ordered Mrs. King to convey the real property to Mr. Smiley.

The position of the parties on appeal is this: Plaintiff, Mr. Smiley, contends that the trial court's findings of fact, as quoted above, are not supported by the evidence. He contends, however, that the evidence does disclose facts which call for the imposition of a constructive trust and that the relief granted by the trial court was, therefore, proper. Defendant, Mrs. King, contends that the findings in question were correct, but that the relief given was improper.

In reviewing the findings of fact, we have examined the record and we find little to help us choose between the conflicting testimony of Mr. Smiley and Mrs. King. The attorney who prepared the deed and the will

testified, but his testimony was ambiguous as to the intended effect of the deed and the terms of the accompanying understanding. The terms of the will are also ambiguous. The will recites that the real property has been conveyed by deed to Mrs. King. It also contains a recitation, quoted above, referring inaccurately to "joint ownership" of the real property which is said to be for Mr. Smiley's convenience and to provide Mrs. King with "ready access * * * in making a division of my estate." The will also directed that upon Mr. Smiley's death, "insofar as practical" Mrs. King is to have the testator's home; that Mildred Robinson is to have the rental house; and that the one-third share which is to go to Alice Comfort is to consist of cash and other property.

The will, as evidence of Mr. Smiley's intent at the time he executed the deed, is consistent either with an understanding that the real property remained his sole property, in spite of the execution of the deed, or with an understanding that Mrs. King held title as trustee for distribution at the time of his death.

Also in evidence is a letter from Mr. Smiley's new attorney, written to Mrs. King after she had recorded the deed, stating that Mr. Smiley's original intent when he executed the deed was to reserve a life estate for himself, and demanding that she execute a deed conveying a life estate to Mr. Smiley.

Without clear guidance from the documentary evidence, we must decide whether to believe the oral testimony of Mr. Smiley or Mrs. King. As we have so often pointed out, when questions of fact in equity cases turn on the credibility of witnesses, we give great weight to the trial court's findings. See, *e.g., Ollman v. Active Homes,* 278 Or 113, 562 P2d 1217 (1977); *Merrill v. Merrill,* 275 Or 653, 552 P2d 249 (1976).

■ For this reason we find, as did the trial court, that the parties' original agreement was that Mrs. King

would take title to the real property as trustee for the benefit of herself and her sisters. We also find, as did the trial court, that one of Mrs. King's duties as trustee was to retain the deed, but not to record it during her father's lifetime, and that by recording the deed without his consent she has breached her duty.

We cannot agree, however, with the trial court's disposition of the matter. In effect, upon finding a breach of duty by the trustee of an express oral trust, the trial court terminated the trust and ordered the reconveyance of the property to the settlor.

■ Plaintiff contends that we may not recognize the existence of an oral trust of land, citing ORS 93.020(1), the Statute of Frauds.[2] That statute may not, however, be invoked under the circumstances of this case. As we have previously held, the Statute of Frauds does not make an oral trust a nullity, but merely makes it void at the election of the trustee. *Hanscom v. Irwin,* 186 Or 541, 567, 208 P2d 330 (1949); *Belton v. Buesing,* 240 Or 399, 410 at n 12, 402 P2d 98 (1965). See, also, Restatement (Second), Trusts 127 § 51; Bogert, Trusts and Trustees 457, § 70 (2d ed 1965).

Mrs. King has not repudiated the oral trust or refused to carry out its essential terms. Although she has breached one of her duties as trustee by recording the deed before the appointed time, she has indicated her willingness, both in the trial court and in this court, to protect her father's interests to the extent they are jeopardized by that breach by agreeing to the entry of a decree recognizing his right to a life estate and requiring her to pay the real property taxes. Mr. Smiley is entitled to a decree which will protect his

---

[2] "No estate or interest in real property, other than a lease for term not exceeding one year, nor any trust or power concerning such property, can be created, transferred or declared otherwise than by operation of law or by a conveyance or other instrument in writing, subscribed by the party creating, transferring or declaring it, or by his lawful agent under written authority, and executed with such formalities as are required by law."

interest in the trust property, but not to a termination of the trust. *Nelson v. Monitor Congregational Church,* 74 Or 162, 166, 145 P 37 (1914); Restatement (Second), Trusts 439-40, § 200 and Comment *b.* See, also, *Person v. Pagnotta,* 273 Or 420, 541 P2d 483 (1975).

The case will be remanded to the trial court for entry of a modified decree, confirming Mrs. King's legal title in her capacity as trustee and requiring her to convey a life estate in the property to her father and to pay the real property taxes from the date of the recording of the deed.[3]

■ We turn to the status of the certificates of deposit.

The two certificates were, as we have said, issued in the names of Mr. Smiley and Mrs. King, who are designated as trustees for Mr. Smiley's other daughters. The documents creating the underlying savings accounts provide that the trust is revocable in full or in part by the withdrawal of funds by either of the named trustees.

All of the money in the accounts was provided by Mr. Smiley. He testified that the money was his own, and that he never made a gift of the accounts to his daughters, but that he made Mrs. King a co-signator solely for the purpose of enabling her to make withdrawals for his benefit if that became necessary. Up to the time of trial no withdrawals had, in fact, been made.

Mrs. King testified that it was her understanding that the money represented by these certificates was not to be used during her father's lifetime except for her father's medical or hospital expenses, and then only with the express consent of her sisters as benefi-

---

[3]The evidence at trial was unclear as to whether Mr. Smiley's intent was to reserve a legal life estate, or merely a lifetime right to possession. Mrs. King, however, requested the trial court to enter a decree recognizing a life estate in Mr. Smiley. She also requested that the decree order her to pay all of the property taxes, rather than just the excess over what Mr. Smiley would have had to pay had the deed not been recorded. The decree we direct adopts the position she took at trial.

ciaries of the trust. She points to no evidence in support of that understanding. The trial court found that Mrs. King had no present right to the funds in the accounts, and applied the principles recognized in *Greenwood v. Beeson,* 253 Or 318, 454 P2d 633 (1969), governing disputes involving joint bank accounts. We said in that case:

> "* * * Where the evidence shows that all of the funds in the account were deposited by only one of the signatories, the other signatory is to be deemed a trustee of the donor's power to withdraw from the account unless the intent to create some other legal relationship is proven." 253 Or at 324.

Mrs. King's "understanding" as recited in her testimony is inherently improbable, and there was no evidence of statements or conduct by her father tending to show that was his intent when he had her name placed on the certificates of deposit. We are persuaded by the trial court's finding of fact on this issue, and we affirm that portion of the decree directing Mrs. King to deliver the certificates of deposit to Mr. Smiley.

Affirmed in part; reversed and remanded in part. Costs to neither party.