MARQUESS, et ux,
*Respondents,*
*v.*
GEUY,
*Appellant,*
*and*
MEHLUM,
*Respondent.*

(No. 75-5708, CA 13709)

614 P2d 142

Jack A. Gardner, Eugene, argued the cause for appellant. With him on the briefs was Lombard, Gardner, Honsowetz, Johnson & Brewer, Eugene.

K. Patrick Neill, Eugene, argued the cause for respondents Marquess. With him on the brief was Hershner, Hunter, Miller, Moulton & Andrews, Eugene.

Robert L. Ridgley and Stoel, Rives, Boley, Fraser and Wyse, Portland, waived appearance for respondent Mehlum.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiffs brought suit to quiet title to real property located in Creswell, Oregon. After trial to the court, defendant Geuy appeals from the decree extinguishing his rights in the property. Geuy contends that a deed validly delivered and executed in accordance with a prior written document signed by the parties sustains his claim to a one-third interest in the property. He assigns as error: (1) the trial court's finding that the document was not intended by the parties to be a final, binding agreement; (2) the conclusion that there was no valid delivery because the grantor had no present intent to pass title; (3) the finding that defendant furnished no consideration for the deed; (4) the court's failure to sustain Geuys objection to admission of parol evidence concerning events prior to execution and delivery of the deed; (5) the imposition of a constructive trust on the property for the benefit of plaintiffs, and (6) the failure to deny plaintiffs equitable relief due to their unclean hands. Our review is *de novo. See Kuhn v. Heerwagen,* 43 Or App 755, 757, n. 1, 604 P2d 416 (1979).

In 1965, plaintiff Robert Marquess, hereinafter referred to as Marquess, president of an engineering consultant firm in Creswell, was engaged in negotiations with defendants Geuy, a realtor, and Mehlum, a bank president, for the purpose of establishing a bank in Creswell. Defendants had experience with this type of venture in Florence, Oregon. Defendants were to help obtain a charter, select a site in Creswell as members of a site selection committee, help obtain financing and assist in general design of the bank, in exchange for the right to purchase or to place one-half of the bank stock. The project went forward, and property owned by plaintiffs was selected for the site. In the spring of 1969, the three men proposed to enter a joint venture to build the bank on plaintiffs' property and to cooperate in future projects. Marquess began construction on the Creswell property

[353]

in July, 1969. Interim financing was obtained through Mehlum's bank. Thereafter, the parties discussed a proposal, drawn up by Geuy, in which defendants would pay a share of the construction cost overrun on the bank project, that is, two-thirds of about $10,000, in exchange for an interest in the bank property. Marquess contends that these terms were fashioned in contemplation of an agreement to engage in a series of joint ventures; Geuy denies that and contends that the terms reflected that defendants' role, nearly completed, in establishing the bank was part of the consideration.

At a meeting on February 26, 1970, when the bank building was completed and the bank open for business, an agreement drawn up by Geuy was presented by Geuy to the others. It contained the terms previously discussed. Defendants' share of the difference between borrowed funds and actual construction costs was to be taken out of their share of rent from the bank, until the overrun was paid off. There was also a provision for defendants to purchase an interest in adjacent property if the bank did not itself purchase it. At this meeting, Geuy read the document to the others, because the lighting was poor, and then all three signed it. Marquess thought that this was another negotiating instrument, for little or nothing had changed from before, and final costs had not, as previously agreed, been made part of the document. Permanent financing arrangements through a bank other than Mehlum's were also completed at this meeting.

Subsequently, plaintiffs executed bargain and sale deeds granting each defendant a one-third interest in the bank property. Marquess mailed both deeds to Mehlum. Mehlum returned them to Marquess for notarization. Geuys deed was dated March 25, 1970; Mehlum's was not produced at trial. Marquess and Mehlum both testified that the deeds were to be held by Mehlum pending a final agreement on future joint ventures. Marquess said at trial he sent the deeds to

Mehlum as his banker, because he thought it was appropriate pending the final agreement, and he did not realize the possible significance of having them notarized. Geuy somehow later obtained his deed from Mehlum. Mehlum never recorded his own deed; he returned it to Marquess in late 1970, or early 1971, after, as he testified, the plan for a series of joint ventures had been abandoned.

Geuy claims that Mehlum returned his deed only to avoid a conflict of interest in that his bank had made the interim loan to finance the Creswell bank. Marquess and Mehlum testified that there was never any discussion about such a conflict. Geuy did not record his deed until August, 1971, the delay being due, he testified, to concern about Mehlum's conflict. After 1971, Geuy did not have any communication with Marquess until 1975, when he telephoned Marquess to ask about his [Geuy's] interest in the bank. This lawsuit ensued.

■ Geuy claims that his possession of the deed raises the presumption that it was validly delivered, that is, transferred with the intent to vest immediate title in him as grantee. *Halleck v. Halleck,* 216 Or 23, 28, 337 P2d 330 (1959). But the deed was not *manually* delivered directly to Geuy, unlike the situation in the case defendant cites to support that presumption, *Suburban Properties, Inc. v. Hanson,* 234 Or 356, 361, 382 P2d 90 (1963). The deeds were sent to Mehlum, a banker, who now claims no interest in the property. It is true that the deed was recorded, not by the grantor but by the grantee, which can give rise to a presumption of delivery. *See Halleck v. Halleck, supra,* 216 Or at 28. Recordation of a deed by the grantee, however, gives rise to a weaker presumption of delivery than recordation by the grantor. And Geuy waited almost a year and a half before recording his deed. But the presumption, to the extent it arises, is not here dispositive.

[355]

██ Whether or not there was valid delivery is a question of fact depending on the intent of the grantor. *Hanns v. Hanns,* 246 Or 282, 296, 423 P2d 499 (1967); *Suburban Properties, Inc. v. Hanson, supra,* 234 Or at 361. Here, Marquess testified that he had no intent to pass title until a final agreement on future joint ventures was reached. Parol evidence is admissible on the issue of validity of delivery. *High v. Davis,* 283 Or 315, 380, 584 P2d 725 (1978). Moreover, completion of a final joint venture agreement can be considered a condition precedent which would, if unsatisfied, prevent the passing of title to the grantee. *See Putnam, et ux. v. Jenkins, et ux.,* 204 Or 691, 724, 285 P2d 532 (1955). Defendant argues that intent to pass title was nonetheless present, since the deed was sent after signing an agreement, final on its face. Mehlum, however, corroborated at trial Marquess' version of the facts, i.e., that the deeds were to be held pending the final joint venture agreement.

Despite the existence of documentary evidence, this case hinges on the relative credibility of the witnesses. Upon review of the record, we note some unanswered questions on both sides. If the agreement was not yet truly final, for example, Marquess' act of sending notarized deeds to one of the grantees seems premature. Marquess says he was relatively unsophisticated in this type of real estate transaction. On the other hand, if the agreement *was* final, and the deeds intended *then* to pass title, it is difficult to see what plaintiffs had to gain from such a transaction. Geuy's credibility is the more seriously strained by his contention, made throughout trial but disavowed by his counsel at its close, that selection of plaintiffs' property as the bank site was an important part of the 1970 understanding. That function was the work of the site selection committee and was already reflected in the 1965 understanding. Geuy's counsel admitted that it was *not* part of the 1970 negotiation.

■ ■     It is a general rule that in matters of witness credibility we give great weight to the findings of the trial judge. *Smiley v. King,* 278 Or 555, 560, 564 P2d 1348 (1977). The trial judge clearly believed the testimony of Marquess and Mehlum and disbelieved Geuy, as shown by his findings. The testimony of Mehlum, one of the supposed grantees and holder of the deeds, corroborates Marquess' contention that the deeds were to be held pending a final joint venture agreement. Marquess and Mehlum testified that negotiations among the three parties were totally abandoned sometime after the deeds were sent and that the deeds never took effect. That is more consistent with Marquess' and Guey's failure to communicate with each other during the following four years, than it is with Geuy's contention that there was nothing to talk about. During that time, Geuy neither showed his claimed interest in the property on loan applications he made nor included his share of the rent (under his theory of the case) as rental income for tax purposes. We conclude that Marquess lacked the requisite intent to pass title when Geuy's deed was transferred to Mehlums custody, and since there was no delivery, Geuy has no interest in the property. That conclusion makes it necessary to discuss additionally only the last assignment of error.

■     Geuy contends that plaintiffs should be denied equitable relief due to their alleged impropriety in contemplating an arrangement whereby Mehlum was to receive an interest in the property in return for securing interim construction financing from his own bank. But that was not the arrangement. According to the prior understanding, defendants were to assist in obtaining financing in return for the right to place or purchase the bank stock. Geuy has not shown that plaintiffs acted improperly, and the trial court did not err in granting their requested relief.

    Affirmed.