Argued November 14, 1968, affirmed May 16, 1969

GREENWOOD, *Appellant, v.* BEESON, *Respondent,* and
THE FIRST·NATIONAL BANK OF
OREGON, *Garnishee-Respondent.*

454 P2d 633

*R. L. McGrew,* Lincoln City, argued the cause and filed a brief for appellant.

*William D. Scalf,* Portland, argued the cause for respondents. With him on the brief were Robertson & Wills, Portland.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and MENGLER,\* Justices.

O'CONNELL, J.

This is an action in which the assignee of a creditor seeks through garnishment proceedings to attach a joint bank account held in the name of Corrine Davis (formerly Corrine Beeson) and her husband Roy D. Davis.

---

\* Mengler, J., did not participate in this decision.

Plaintiff obtained a default judgment against defendant Corrine Davis. Plaintiff sought to reach the joint account through a garnishment proceeding in which the First National Bank of Oregon was the garnishee. Plaintiff obtained an order requiring defendant garnishee to show cause why it should not be required to pay plaintiff's claim against defendant Corrine Davis out of the joint account.

In the garnishment proceedings Roy Davis testified that he had contributed all of the money making up the joint account and defendant Corrine Davis testified that she had not contributed any money to the account. The trial court then dismissed the order to show cause on the ground that the joint bank account was not subject to execution for the debt of defendant Corrine Davis.

The deposit agreement signed by Roy D. Davis and Corrine M. Davis read as follows:

"The undersigned agree between themselves and with THE FIRST NATIONAL BANK OF OREGON, Portland:

"(1) That this account has been opened and is to be carried by said bank as a joint account which *shall be owned jointly by the undersigned with right of survivorship* * * *. [Emphasis added.]

"(2) * * * [A]ll deposits entered in or credited to this account shall be paid by the bank to or upon the order of either of the undersigned or the survivor, without reference to the original ownership of the moneys deposited, but the survivor agrees to notify the bank immediately upon the death of either of the undersigned before attempting to make any further withdrawals and to comply with all laws, rules and regulations relating thereto. "* * * * *

"(4) That without the consent of the other, *either of the undersigned may appropriate funds*

*deposited to this account* by withdrawing the same or by transferring such funds, in whole or in part, to his individual account or in payment of his individual obligations or otherwise, *and* that *all interest of the other in such funds shall thereby be divested.* [Emphasis added.]

"(1) Roy D. Davis
"(2) Corrine M. Davis."

The cases involving the right of a creditor to reach the interest of his debtor in a joint bank account are in conflict.[1] The confusion in this area of the law as well as in other aspects of the law relating to joint bank accounts has been appropriately described as "the joint bank account muddle."[2]

█ It is generally recognized that this confusion results from the attempt to apply traditional property concepts, particularly the theory of joint tenancy, where they do not fit.[3] It has been urged, therefore, that the courts refashion the law relating to joint bank accounts to provide rules which are more consistent with the intention of those who use the joint bank account device.[4]

---

[1] See Annotation: Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of one of the Joint Depositors, 11 ALR3d 1465 (1967).

[2] See Kepner, Five More Years of the Joint Bank Account Muddle, 26 U Chi L Rev 376 (1959). See also Comment, 71 Harv L Rev 557 (1958).

[3] "This type of account is difficult, if not impossible, to classify under traditional categories of legal ownership. The account is distinguished from a joint tenancy because of the fact that it is joint and several, whereas in a joint tenancy there is joint ownership only. The survivorship feature of the account readily distinguishes it from a tenancy in common, and yet is not sufficient alone to make it a joint tenancy." Park Enterprises v. Trach, 233 Minn 467, 47 NW2d 194, 195-96 (1951). Kepner, *supra* note 2; Wellman, The Joint and Survivor Account in Michigan—Progress Through Confusion, 63 Mich L Rev 629 (1965); Comment, 71 Harv L Rev 557 (1958); Comment, 60 Mich L Rev 972 (1962); Note, 26 Or L Rev 114 (1947).

[4] *Ibid.*

We are convinced that these criticisms and suggestions are sound and that we should cut a new path in this field of the law.

The difficult problem is to describe the relationships arising out of the creation of a joint bank account which most nearly comports with the commonly accepted functions of the joint bank account and the usual intention of the parties who employ it. Fortunately an excellent blue print for the solution of this problem has been made available to us in the article entitled "The Joint and Survivor Account in Michigan —Progress Through Confusion," by Richard V. Wellman in 63 Mich L Rev 629 (1965). It is Professor Wellman's thesis that the joint and several account typically is not intended to be for the benefit of the donee signatory of the deposit agreement until the donor depositor's death. The typical donor depositor intends to make the donee a trustee of the donor's power to withdraw from the account. "The trust would be for the benefit of the donor during his lifetime and, subject to the possibility of revocation or consumption by the donor, for the benefit of the donee upon the donor's death. * * * The donee, even if he exercised his right of withdrawal during the donor's lifetime, could not affect the donor's right in equity to compel the application of the proceeds of the trustee's title to the donor's benefit. If the donor died prior to revocation of the trust, his interest would cease and the donee's equitable right to the balance in the account would become present beneficial ownership." *Id.* at 661-662.

We are of the opinion that the foregoing analysis is sound and therefore we adopt it. Since we take this new approach it is not necessary to reconcile our present view with the theory applied in the previous Ore-

gon cases involving joint bank accounts. We note in passing, however, that the trust theory we have now adopted has been previously recognized. In *Holbrook v. Hendricks' Estate,* 175 Or 159, 152 P2d 573 (1944) we recognized the trust character of the relationship between the donor depositor and the co-signatory. In that case the money was deposited in a joint account under circumstances showing an intention that no beneficial interest was to pass to the other person named in the joint account. It was held that moneys drawn from the account by the donee for her own benefit violated the trust.

It will be noted that the deposit agreement recites that the account "shall be owned jointly by the undersigned with right of survivorship," and that either of the signatories may appropriate the funds by withdrawing them in whole or in part and "that all interest of the other in such funds shall thereby be divested."

Applied literally the language of the deposit agreement would create in the signatories in all cases a present concurrent ownership in the account. However, parties signing such an instrument ordinarily do not regard it as memorializing an agreement fixing their respective rights in the account in all of the various contingencies under which deposits are made and money is withdrawn. In signing such an agreement the parties do not freely contract as they do when they prepare their own instrument. A deposit agreement is an adhesion contract prepared by the bank primarily to protect its own interests rather than to define the rights of the co-depositors *inter se.* Illustrative is the provision that withdrawals by one co-depositor will divest the other of his interest. On the other hand, the provision for a right of survivorship would, in most instances, express the intent of the parties. And

where both parties make deposits into the account the provision of the deposit agreement that the account shall be "jointly owned" probably would in most cases express their intent to create a present concurrent interest of some kind in the account. Evidence should be freely admissible to show what the parties intended with respect to their respective interests in the account.[5] However, when all of the funds in the account are deposited by only one of the signatories the recitation in the deposit agreement that the account is "jointly owned" should not be treated as conclusively establishing the intent of the parties. To do so would be to give to the deposit agreement an effect which is normally not intended by those who open such accounts. Where the evidence shows that all of the funds in the account were deposited by only one of the signatories, the other signatory is to be deemed a trustee of the donor's power to withdraw from the account unless the intent to create some other legal relationship is proven.[6]

■ In the present case the evidence established that the debtor had not deposited any moneys in the account. She was, therefore, according to our analysis merely a trustee of her husband's power to withdraw from the account. Since the debtor had no beneficial interest in the account there was nothing subject to garnishment.

The judgment of the trial court is affirmed.

---

[5] Holbrook v. Hendricks' Estate, 175 Or 159, 168-69, 152 P2d 573 (1944). For authority in other jurisdictions see cases collected in Annot., 33 ALR2d 569, 573 § 3 (1954).

[6] It is not necessary for purposes of the present decision to describe the respective interests of the co-depositors where each make deposits to the account.