Argued December 20, 1972, affirmed January 19, 1973

In the Matter of the Estate of
Alice Adele Lauterman, Deceased.

GLENN, *Appellant, v.* THE BANK OF
CALIFORNIA, N. A., *Respondents.*
505 P2d 365

*Eric L. Larsen,* Eugene, argued the cause for appellant. On the brief were Butler, Husk & Gleaves, Eugene.

*David N. Hobson,* Portland, argued the cause for respondent Bank of California, N. A. With him on the brief were Phillips, Coughlin, Buell, Stoloff & Black, Portland.

*Fred B. Duffy,* Portland, argued the cause and filed the brief for respondent Rev. Jack H. Stipe.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

This appeal presents again the question "whether the balance in a joint savings account became the property of the surviving joint depositor or constituted an asset of the estate of the other joint depositor." *Roehr v. Pittman,* 256 Or 193, 194, 472 P2d 278 (1970). The circuit court concluded that the savings bank account here involved passed to defendant Jack H. Stipe pursuant to the will of Alice A. Lauterman, deceased, and did not belong to claimant, Mary H. Glenn, who, at the time of Mrs. Lauterman's death, was, with Mrs. Lauterman, a cosignatory with right of

survivorship of that joint savings account. It is undisputed that the decedent contributed all of the money deposited in the joint account.

We set forth the facts chronologically.

The savings account in question, Willamette Savings and Loan Association Account No. 6238, was opened by the decedent on November 9, 1964, in her name alone. Jack H. Stipe was added to the account as a joint depositor with right of survivorship on September 10, 1966. At various times Mrs. Lauterman created a number of joint accounts, naming other persons as joint depositors. There were 11 of these joint savings accounts when decedent executed her will November 21, 1966, none of which were mentioned therein.

The decedent's first codicil, executed December 1, 1966, set forth those 11 existing accounts including the one here involved, and another which she had previously closed, designating the joint depositors then named thereon as the legatees thereof.

She executed her second codicil February 13, 1967. This bequeathed a painting and a diamond ring and contains a republication clause of the November 21, 1966, will, but does not refer to the first codicil.

Next a question arose in the fall of 1967 concerning one of the accounts① resulting in the decedent's

---

① The decedent's attorney, John J. Coughlin, in an affidavit stipulated to by all parties, stated, inter alia:

"In the Fall of 1967, Mrs. Lauterman received a letter from the State Treasurer about a joint account in her name and the name of another person. It seemed that the latter, whose name I cannot recall, had died and the State was interested in inheritance taxes. Mrs. Lauterman was incensed and came in to see me, saying it was her money and no one else had any interest in it. She then executed the Affidavit (Exhibit A) which was sent to the State Treasurer, and the matter was closed."

executing an affidavit October 16, 1967, which listed the accounts mentioned in her first codicil and declared:

"That from time to time I have instructed the various banks to put names other than my own on said accounts; that at no time did I intend to make a gift of any part of the savings accounts to any persons whose names appear on any of the accounts, and all of the funds in said accounts are solely my funds.

"That the reason for putting names other than my name on any of the said accounts is for convenience in the event anything should happen to me whereby I would be unable to handle my own affairs and whereby it might be necessary for someone other than myself to draw upon said accounts for my benefit solely. For instance, on the said United States National Bank Savings Account No. 364817-7, the names on said account are: Alice A. Lauterman or Marjorie F. Culver or Cora E. Olson. By placing said names on said account, it was my intention to do so only for my own convenience and to give no interest in said account to either Marjorie F. Culver or Cora E. Olson.

"That I have executed a Will, dated November 21, 1966, and a Codicil to said Will, dated December 1, 1966. *That it is my intention to dispose of the funds in said savings accounts as provided for in my said Will and Codicil thereto or any subsequent Will or Codicil made by me and not in accordance with the names which may appear on any such savings accounts."* (Emphasis supplied.)

On May 1, 1968, claimant was added to the account here in question while Rev. Stipe was removed and named as joint depositor on another account. On September 19, 1968, claimant was removed and replaced by another. However, she was again named as joint depositor on the account on May 8, 1969. She

signed the bank signature card on both occasions, as did the joint depositors on the other accounts.

On February 2, 1970, decedent executed her third —and last—codicil, which provided, inter alia:

"I hereby amend Paragraph I of the Codicil to said Last Will and Testament, which Codicil is dated the 1st day of December, 1966, and which Paragraph I of said Codicil amended Paragraph THIRD of said Last Will and Testament, to eliminate the gift of $1,000 to John J. Coughlin.

"EXCEPT as herein specifically provided, I hereby ratify, republish and redeclare my said Last Will and Testament dated the 21st day of November, 1966, and Codicil thereto dated the 1st day of December, 1966."

Decedent died September 19, 1970, at the age of 92. The balance in the disputed account is $13,699.14.

As stated by the defendant Bank of California, the personal representative of the deceased, in its brief, before and after the execution of the will and its various codicils "the decedent played 'musical chairs' with the accounts by frequently changing the joint tenants and at times moving funds from account to account." At the time of decedent's death only four of the accounts had the same persons as joint depositors as appeared in her first codicil. It is conceded that the decedent at all times had each of the savings books in her possession, and that in fact neither Rev. Stipe nor Mrs. Glenn, during the period each appeared as a joint depositor, ever withdrew money from or otherwise exercised dominion over the savings account.

In *Greenwood v. Beeson,* 253 Or 318, 454 P2d 633 (1969), the Supreme Court adopted a new rule

concerning joint savings accounts of the type here involved, and said:

"* * * Evidence should be freely admissible to show what the parties intended with respect to their respective interests in the account. However, when all of the funds in the account are deposited by only one of the signatories the recitation in the deposit agreement that the account is 'jointly owned' should not be treated as conclusively establishing the intent of the parties. To do so would be to give to the deposit agreement an effect which is normally not intended by those who open such accounts. Where the evidence shows that all of the funds in the account were deposited by only one of the signatories, the other signatory is to be deemed a trustee of the donor's power to withdraw from the account unless the intent to create some other legal relationship is proven." 253 Or at 324.

*Roehr v. Pittman,* supra, considered a case where the donor-depositor died leaving a will which did not mention or otherwise specifically refer to a joint savings account. The court said:

"* * * Therefore, the will in this case did not operate to dispose of Mrs. Hosken's interest in the savings account. Nor was the account disposed of by her statements made to her attorney at the time the will was being prepared. Her statements at that time cannot be regarded as evidencing an intention to make an inter vivos transfer of the account. * * *

"It could be argued that the extrinsic evidence showing an intent to dispose of the account, even though abortive, indicates an intent to revoke the survivorship interest of Ruth Pittman created by the execution of the signature card and therefore the savings account passes intestate or falls into the general residuary clause of the will.

"We do not think that the evidence indicates

that Mrs. Hosken would have intended the survivorship gift to Ruth Pittman to be revoked if the will was ineffective to dispose of the account." 256 Or at 197-98.

The court also described the nature of a joint savings account of the type here involved as follows:

"During the joint lives of Helen Hosken and Ruth Pittman, the latter was a trustee of a power to withdraw from the account for the benefit of Helen Hosken. See *Greenwood v. Beeson* \* \* \* [253 Or 318, 454 P2d 633 (1969)]. During the joint lives of the depositors, Ruth Pittman had a contingent right of survivorship, subject to being defeated or diminished by Helen Hosken's withdrawal or disposition of all or part of the fund." 256 Or at 195.

■ From the foregoing authorities, we conclude that a joint savings account of the type here involved may be defeated or diminished by the joint donor-depositor not only by withdrawal or disposition of all or part of the fund by the joint donor-depositor during his lifetime but also by specific testamentary disposition in the will of the joint donor-depositor.

In *Cline v. Larson*, 234 Or 384, 383 P2d 74 (1963), the court stated:

"The applicable rule is stated as follows in 57 Am Jur, Wills, § 626, page 428:

" 'A duly executed codicil operates as a republication of the original will and makes it speak from the new date, in so far as it is not altered or revoked by the codicil, although the codicil is not physically annexed to the will, and although the will is not in the presence of the testator at the time of executing the codicil, where it refers to the will in such a way as to identify that instrument beyond doubt. If a codicil revokes in terms portions of the will, it re-

'publishes the will as of the date of the codicil in respect of all parts not revoked.'" 234 Or at 416.

■ Based upon the facts set forth above, the trial court here concluded that unlike the testator in *Roehr*, Mrs. Lauterman by her will and its first and third codicils had made specific testamentary disposition of Account No. 6238, Willamette Savings and Loan Association, to Jack H. Stipe. We agree.

Decedent's October 16, 1967, affidavit clearly states her intention was to retain all interest in the funds so that they would pass through her estate as provided in her will.

Claimant argues, inter alia, that since this affidavit was written before claimant was first designated in the disputed account it does not indicate her intent at that time. We do not agree. That the decedent contemplated future name changes in the joint bank accounts is made clear not only by the closing sentence of the affidavit:

"* * * That it is my intention to dispose of the funds in said savings accounts as provided for in my said Will and Codicil thereto or any subsequent Will or Codicil made by me and not in accordance with the names which *may* appear on any such savings accounts." (Emphasis supplied.)

but also by the fact that she continued to change the names in many of the accounts of the joint donee-depositors thereafter.

This, when considered with the specific reference in the republication clause of the third codicil executed in February 1970 to Paragraph I of the first codicil which bequeathed the challenged savings account to

Jack H. Stipe, causes us to conclude that any interest Mrs. Glenn may have had in that account was thereby terminated.

Affirmed.