# ESTATE OF OPAL L. ANDERSON, DECEASED
## *v.* DEPARTMENT OF REVENUE

David P. Templeton and Steven H. Hughes, of Martin, Bischoff, Templeton & Biggs, Portland, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered February 25, 1976.

CARLISLE B. ROBERTS, Judge.

This is an inheritance tax case. Decedent died, leaving joint bank accounts. Her estate has appealed from the defendant's Order No. IH 75-8, dated June 18, 1975, levying tax against the entire balance of the joint accounts pursuant to ORS 118.010(2) (a). Issues were raised as to the court's jurisdiction to try the suit and, on the merits, as to the legal nature of joint bank deposits.

At the time of trial, counsel for the defendant orally demurred to the plaintiff's complaint, on the ground that the court did not have jurisdiction. Defendant has repeated its contention in post-trial briefs on the ground that the Tax Court has no probate jurisdiction to determine property rights as between the estate of the deceased donor-depositor of a joint bank account and the surviving joint tenant. Defendant argued that the court's decision necessarily would include the determination of title to and rights in property claimed by or against the personal representative —a power which, it is alleged, "is specifically reserved to probate jurisdiction by ORS 111.085; * * *." Counsel conceded before this court that none of the questions raised in this cause had been subjected to inquiry in the probate court.

This court rejects the defendant's view that consideration of all the items listed in ORS 111.085 are specifically reserved to the probate court. The Tax Court must avoid any infringement upon the acts of the probate court but at the same time must obey the mandates of ORS 305.405, 305.410 and 118.410, requiring it to take jurisdiction over inheritance tax disputes and to determine all questions of law and fact arising

under the inheritance tax laws. In carrying out its duties, the Tax Court may cover ground which would be considered by a probate court in connection with different questions. Any prior determinations of fact made by the probate court, meeting the requirements of collateral estoppel, would be followed by the Tax Court. The Tax Court has jurisdiction over the present cause to the extent necessary to render a decision affecting inheritance taxes.

■■ Defendant next contends that a transfer was made to Mr. Thomas as a matter of law upon the decedent's death, pursuant to ORS 118.010(2) (a), which, in pertinent part, reads:

"Whenever property, * * * is * * * deposited in banks * * * in the joint names of two or more persons and payable to either or the survivor, upon the death of one of such persons the right of the surviving joint tenant * * * to the immediate ownership or possession and enjoyment of such property shall be deemed a taxable transfer in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased joint tenant or depositor and had been devised or bequeathed to the surviving joint tenant * * *."

This argument overlooks the phrase, "the right of the surviving joint tenant," as used in the statute, and the applicable Oregon case law. A consideration of the suit on its merits, to determine the "right" of the survivor of two signatories to a joint bank account to succeed to the balance remaining in the account upon the death of the donee-depositor, and the imposition on the balance of an inheritance tax pursuant to ORS 118.010(2) (a), requires ascertainment of the intent of the deceased donor-depositor, to be gathered from the available competent evidence. *Andrews v. Hochmuth,* 253 Or 313, 454 P2d 636 (1969); *Greenwood v. Beeson,* 253 Or 318, 454 P2d 633 (1969). These Oregon decisions reject the conclusions of *In re Estate of Gil-*

*lespie,* 462 Pa 455, 341 A2d 471 (1975), cited by defendant.

On July 16, 1945, the decedent, then married to Frederick B. Anderson, published a will which, after a provision for the payment of debts, named her husband as her residuary legatee if he survived the testatrix. In the event that the husband was not living at the time of her decease, the residue was divided as follows: $1,000 to the Nile Patrol of Daughters of the Nile, Temple No. 4, of Portland, the balance to the American Red Cross and the Shriners Hospital for Crippled Children, in Portland, share and share alike. At that time, the joint bank accounts which are the subject of this suit had not been created.

Decedent's husband predeceased her, dying in 1969. Decedent was then approximately 70 years of age, residing in Bend, Oregon. She frequently visited Portland because of property interests and friends located in that city. Among these was a widower, Herbert O. Thomas. The Andersons and the Thomases had been friends for 30 years prior to the death of the respective spouses.

On April 1, 1968, decedent had opened a savings account (No. 188 2046613) in the Bend branch of the First National Bank of Oregon. On February 1, 1973, this was changed to a joint account under the names of decedent and Herbert O. Thomas. On March 13, 1973, a joint checking account (No. 03375-8) was established under the same names. On July 24, 1973, both accounts were transferred to Portland. At the time of decedent's death on November 5, 1973, the accounts contained $43,411.97, all of which had been deposited by the decedent. As of that time, Mr. Thomas had never withdrawn any money from either account, either on behalf of the decedent or for himself. He claimed that, as of decedent's death, the balance in

the accounts belonged to him as a matter of right. Plaintiff contends that the status of Mr. Thomas during the life of the decedent was that of a trustee as to the bank accounts and that no rights therein accrued to the survivor upon decedent's death.

The bank's signature cards, the only useful evidence of the existence of the joint accounts, contained a printed statement, drafted by the bank, placed just above the signature lines, as follows:

"JOINT ACCOUNT: If this card is signed by more than one person, the account shall be carried by the Bank as a joint account and shall be governed by the following agreement

"The undersigned agree between themselves and with FIRST NATIONAL BANK OF OREGON:

"(1) That this account has been opened * * * as a joint account which shall be owned jointly by the undersigned with right of survivorship * * *.

"(2) That * * * all deposits entered in or credited to this account shall be paid by the Bank to or upon the order of either of the undersigned or the survivor, without reference to the original ownership of the moneys deposited, * * *."

In *Greenwood v. Beeson, supra,* a similar agreement was involved. The court stated (253 Or at 321):

"* * * The confusion in this area of the law as well as in other aspects of the law relating to joint bank accounts has been appropriately described as 'the joint bank account muddle.' " (Footnote omitted.)

The court sought to end the confusion, as far as possible. It pointed out that a "deposit agreement" for a joint bank account is an "adhesion contract"; that is, a standardized contract proferred on a take-it-or-leave-it basis to one lacking bargaining power. The

court further held that, where all funds in a joint bank account had been deposited by only one of the signatories to the deposit agreement, the recitation in the deposit agreement that the account is jointly owned should not be treated as conclusively establishing the intent of the parties. The court particularly noted that evidence should be freely admissible to show what the parties to the deposit agreement establishing the joint bank account intended with respect to their individual interests in the account.

In *Greenwood,* the court adopted the

"* * * thesis that the joint and several account typically is not intended to be for the benefit of the donee signatory of the deposit agreement until the donor depositor's death. The typical donor depositor intends to make the donee a trustee of the donor's power to withdraw from the account. 'The trust would be for the benefit of the donor during his lifetime and, subject to the possibility of revocation or consumption by the donor *for the benefit of the donee upon the donor's death.* * * * The donee, even if he exercised his right of withdrawal during the donor's lifetime, could not affect the donor's right in equity to compel the application of the proceeds of the trustee's title to the donor's benefit. *If the donor died prior to revocation of the trust, his interest would cease and the donee's equitable right to the balance in the account would become present beneficial ownership.'* * * *" (253 Or at 322; emphasis supplied.)

The Supreme Court, while stressing the necessity for determining the intent of the donor for the purposes of the specific case, nevertheless concluded that: "* * * *On the other hand, the provision for a right of survivorship would, in most instances, express the intent of the parties.* * * *"(253 Or at 323; emphasis supplied.)

In the opinion of this court, no substantial evi-

dence has been introduced herein which aids ascertainment of the intent of the decedent-donor and the joint signatory in creating the joint accounts, apart from the two deposit cards. Other than brief oral argument, the case was submitted basically upon the introduction of exhibits and the depositions of Herbert O. Thomas (dated March 26, 1974), of Raymond A. Babb (dated April 18, 1974), who had acted as attorney for the decedent in some matters in Bend, and of Elinor L. Denton (dated May 3, 1974), a legal secretary to Mr. Babb who had had numerous contacts with the decedent.

From a reading of the depositions, the court is able to conclude that the decedent and Mr. Thomas were long-standing family friends and that, after her husband's death, decedent and Mr. Thomas saw each other frequently. The decedent turned to Mr. Thomas (at that time about 58 years of age) for aid which was never defined, resulting in establishment of the joint accounts, but (because of an indecisive turn of mind) she had difficulty in resolving the nature of their relationship (including even a possibility of marriage). She talked in general terms of replacing her will, but took no specific steps to do so. Her statements, paraphrased by the deponents herein, were ambiguous, unresolved and contradictory. Decedent took no specific measure to prevent Mr. Thomas from asserting rights to the joint accounts upon her death. Except for the execution of the contracts of joint account with the bank, no satisfactory evidence has been adduced as to the decedent's intent to give or not to give Mr. Thomas rights of survivorship. However, these two mature, experienced people *did* sign two contracts for joint accounts with survivorship provisions, raising a rebuttable presumption that the benefits of survivorship were contemplated. No evidence has been produced which would overcome the presumption. The

parties were and are bound by their proved act of entering into the agreements by which the joint accounts were created. No restrictive words were used which preclude the survivor from properly claiming ownership of the accounts. *See Andrews v. Hochmuth, supra.* Inheritance tax must be paid on the transfer, measured by the value of the deposits.* Public policy requires this conclusion.

The Department of Revenue's Order No. IH 75-8, dated June 18, 1975, and its Notice of Determination and Assessment of Inheritance Tax, dated June 17, 1975, are affirmed and the plaintiff's appeal is dismissed.

---

* The court takes notice that a controversy between the personal representative and Mr. Thomas was settled for less than the whole amount involved and that the case of *The Bank of California, National Association, as Personal Representative of the Estate of Opal L. Anderson, Deceased v. The First National Bank of Oregon and Herbert O. Thomas,* Circuit Court, Multnomah County, No. 399-914, was dismissed without prejudice. The inheritance tax is calculated by determining who has a right to a share of the estate and the value of the right at the time of death. The fact that there was a will or other contest, which was compromised, does not affect the computation of the tax. *Hartung v. Unander et al,* 224 Or 165, 355 P2d 738 (1960).