Argued November 7, 1977, affirmed February 14, 1978

JOHNSON, *Respondent,*
*v.*
STEEN et al, *Appellants.*
(No. 35695, SC 25032)

575 P2d 141

Ralph W. G. Wyckoff, Salem, argued the cause and filed the briefs for appellant Lillian Steen.

Paula M. Bechtold, Coos Bay, argued the cause for appellants Donald R. Steen and Elizabeth F. Steen. With her on the brief was Bechtold and Laird, Coos Bay.

Roger B. Todd, North Bend, argued the cause for respondent. With him on the brief was Flaxel, Todd and Nylander, North Bend.

Before Denecke, Chief Justice, Howell and Bryson, Justices, and Richardson, Justice Pro Tempore.

RICHARDSON, J., Pro Tempore.

**RICHARDSON, J.,** Pro Tempore.

This is a suit in equity to recover $150,000 acquired by defendants from plaintiff's ward. The court ruled the ward had not made a gift of the funds. The court decreed that two mortgages, which had been discharged by defendants from the funds in issue, were reinstated and that plaintiff was subrogated to the rights of these secured creditors. The decree awarded plaintiff an equitable lien on three items of personal property purchased by defendants and awarded judgments against defendants for the balance of the funds which had been expended but which could not be traced to an identifiable asset.

On appeal the defendants make three contentions. (1) The evidence establishes there was a gift of the funds to defendant Lillian Steen. (2) Assuming there was no gift a money judgment for the untraceable funds is not an appropriate remedy. (3) Plaintiff had an adequate remedy at law and the complaint in equity should be dismissed. The matter being tried as a suit in equity, our review is de novo, ORS 19.125(3). We affirm.

In resolving these issues it is necessary to detail the factual setting of this suit. All of the parties are related. Plaintiff, who is the nephew of the ward, was appointed conservator after the alleged misappropriation of funds. He is the sole beneficiary named in the ward's present will. The ward, Carl Johnson, who is still living, was 84 years old at the time the money was taken. From the record we can determine his estate was in excess of $200,000 including the funds in issue. The record suggests there are additional assets, but there is insufficient information to determine what they are or their value.

Defendant Lillian Steen, who is 77 years old, is the sister of the ward Carl Johnson. Defendants Donald and Elizabeth Steen are her son and daughter-in-law.

Sometime in 1974 the ward, Carl Johnson, was injured in an automobile accident. He was hospitalized

and ultimately placed in a nursing home for recuperation. During his incapacitation Lillian Steen assisted him with some of his financial affairs. To facilitate her handling of these matters she was given joint signature authority on his checking and savings accounts. She would write checks or withdraw funds as necessary for Carl's benefit or upon his request. She visited Carl almost on a daily basis while he was in the hospital and the nursing home.

The ward rented a safety deposit box at the First National Bank and prior to June 16, 1975, was the only person authorized to open it. On that date he extended authorization to enter the box to Lillian Steen, the plaintiff and plaintiff's son. Plaintiff had been assisting Carl in some measure with his financial affairs but had not as yet been appointed conservator.

A week or so after being given authority to enter the safety deposit box, Lillian opened it to inventory its contents so as to know what was in it in case the ward wanted her to retrieve an item. At that time she discovered an envelope bearing the notation, in Carl's handwriting: "5-28-75—For L E Steen only." L. E. Steen is defendant Lillian Steen. Inside the envelope was a Time Certificate of Deposit (TCD) in the amount of $150,000 made out to Carl Johnson as payee. She was very elated and immediately showed the envelope and TCD to Dorothy McNeil, the loan officer of the bank, and also to the bank's operations officer. They both advised Lillian that the notation on the envelope had no legal significance unless her name appeared on the certificate as a payee. Dorothy McNeil explained to Lillian that she would have to have Carl sign off the old certificate and authorize issuance of a new certificate to include Lillian's name as a payee.

Shortly after finding the certificate Lillian contacted the ward's attorney and told him about the discovery of the certificate and the notation on the envelope. The attorney said "it would be better to put it in the will." Lillian relayed this message to Dorothy

McNeil of the bank who responded that the attorney just wanted another fee for making a new will. She reiterated her conclusion that the transfer could be accomplished by reissuing the TCD in Lillian's name.

On the instructions of Lillian, the bank made out a new TCD designating the payees as "Carl W Johnson or Lillian Steen." The bank officer explained to Lillian that the use of the conjunction "or" meant either payee could negotiate the certificate. In Lillian's words this meant "it was as much mine as it was his." She arranged to go with Dorothy McNeil to the nursing home to complete the transaction. This they did on September 23, 1975. Dorothy McNeil, who arrived at the nursing home ten minutes before Lillian, testified Carl was awake, friendly and alert and was talking and thinking clearly. After Lillian arrived Dorothy McNeil explained at least twice to Carl that they were there to reissue the certificate. She also explained that putting both names on the certificate separated by the word "or" meant that either one could cash the TCD. She testified Carl read the new certificate, endorsed the old certificate and signed the authorization to issue the new one. Neither Dorothy McNeil nor Lillian explained, or in any way noted, to Carl that Lillian considered the TCD to be a gift to her or that she intended to cash the certificate on maturity for her own purposes. The new certificate was handed to Lillian in Carl's presence. The TCD matured on November 7, 1975.

Dorothy McNeil typed the following notation on the back of the old TCD:

"At Carl W Johnson's request and due to his poor health he asked us to reissue this TCD so as to issue a new one in the name of he and his sister. Everything is the same on the new TCD #251106 except the payee."

She testified this explanation was necessary in order that there not be an interest penalty for premature negotiation of the old certificate. She testified she had not determined from Carl his reasons for reissuing the

certificate. She said she merely satisfied herself that that is what he wished to do.

Lillian never discussed with Carl her intent to cash the certificate although she visited him often. She cashed the certificate on November 7, 1975, when it matured. Lillian subsequently paid the $150,000 proceeds of the TCD to her son and daughter-in-law as a gift. They in turn issued their check to Lillian for $25,000. Consequently the son and daughter-in-law received $125,000 and Lillian received $25,000 from the proceeds of the TCD.

Lillian used approximately $19,000 to pay off the mortgage on her home and the balance was expended for various living expenses. The son and daughter-in-law, who own and operate a dairy farm, paid off a note secured by their cattle and farm equipment in the approximate amount of $79,000. They purchased a silo, a generator and a trailer house with the funds. The balance of approximately $24,000 was used for wages, supplies and hay for the farm and to pay off several debts. The son and daughter-in-law were told the money was a gift to Lillian by Carl but were unaware of the circumstances surrounding Lillian's receipt of the funds.

Carl did not testify, however, his deposition was received in evidence. In it he denied several times that he intended to make a gift to Lillian. Regarding the notation on the envelope containing the certificate— "For L E Steen only"—he stated "* * * I figured that was when my estate was settled, the judgment day."

On December 1, 1975, Carl sent a letter to Lillian. The letter had been written by his attorney but was signed by Carl. He noted that plaintiff had been appointed his conservator and asked that she turn over to plaintiff all of his property. The letter continued:
"* * * I have been told that you cashed in a C.D. issued by the First National Bank for $150,000.00 and

[ 366 ]

that you put $130,000.00 of that into a Cashier's check in your own name. You have not told me about that. You must account to Cecil [plaintiff] for this without any delay and return this money to my estate."

He also indicated in the letter that it was not his intention to give away any of his property and that he had allowed her name to be included on his certificates and accounts so she could protect the funds and use them for his benefit.

After September 23, 1975, when the TCD in issue was changed to reflect Lillian and Carl as joint payees, Lillian had three other TCDs totalling approximately $35,000, which were drawn on another bank, reissued with Carl W. Johnson and Lillian Steen as payees. This was done by having Carl sign off the old certificates and authorizing the issue of new certificates in the presence of a bank officer. Sometime in October 1975, the plaintiff, who had not as yet been appointed conservator, began changing Carl's checking and savings accounts to reflect the plaintiff and Carl as joint signators. This was done at Carl's request so that plaintiff could manage Carl's financial affairs. Early in November 1975, prior to the maturity date of the certificate in issue, plaintiff discovered Lillian had procured the reissue of all the ward's TCDs in her joint name. Lillian and the plaintiff met in the parking lot of the nursing home on their way to visit Carl and plaintiff asked Lillian about the certificates. Lillian responded, according to plaintiff, that "he [Carl] wants me to have it." They both went into the nursing home to talk to Carl about his wishes in the matter. Plaintiff testified that they discussed with Carl his desires in having plaintiff and not Lillian as joint signatory on his accounts and joint payee on the TCDs. He testified there was no discussion to the effect that Carl had made a gift to Lillian of the $150,000 TCD. Their discussion, he swore, concerned the accounts and certificates generally. Lillian did not controvert this

version of the meeting with Carl.[1] In any event Carl neither confirmed nor denied a gift had been made.

The complaint was filed on December 5, 1975. The matter proceeded to trial on a second amended complaint which prayed for an accounting, a constructive trust on all funds or traceable property purchased by the misappropriated funds, for a judgment against defendants and for general equitable relief. Defendant Lillian Steen's answer generally denied the allegations of the complaint and alleged as an affirmative defense that the TCD was a gift to her. The answer of Donald and Elizabeth Steen, after a general denial, alleged the affirmative defense that they were donees of Lillian Steen without notice of a breach of trust and had changed their position by expending the funds they received so that granting plaintiff's relief would be inequitable and work a hardship on them.

## BURDEN OF PROOF

■ Defendant Lillian Steen contends that the plaintiff has the burden of proving that no gift was made. Plaintiff alleged that defendants misappropriated the ward's property; gift was pleaded as an affirmative defense. Under these circumstances plaintiff must prove the misappropriation and the burden then shifts to defendants to prove the affirmative defense that a gift was made. ORS 41.210. It is true, as defendants argue, that if plaintiff had put on no evidence there could be no judgment against them. However, once plaintiff sustains his burden of establishing ownership of the funds and their appropriation he is entitled to their return unless defendants can establish the affirmative defense that a gift was made.

---

[1]The court separated the trial on the issues. The first proceeding concerned only the issue of whether a gift had been made. Lillian, although present, was not called as a witness. Her testimony was received by introduction of her deposition. The court, after determining no gift had been made, set the matter for a later date to consider evidence on an accounting and to determine the proper remedies. Lillian testified at the later hearing.

## GIFT

■ The primary issue in this action is whether the TCD was an *inter vivos* gift to Lillian Steen. The essential elements of a gift *inter vivos* are an intent on the part of the ward that there be a gift that goes into immediate and absolute effect, that there be delivery by transfer of possession and absolute dominion over the subject of the putative gift and acceptance of the gift by the claimed donee. *Holbrook v. Hendricks' Estate,* 175 Or 159, 152 P2d 573 (1944); *Manning v. U.S. Nat. Bank,* 174 Or 118, 148 P2d 255, 153 ALR 922 (1944). We conclude, as did the trial court, that Carl Johnson did not intend to make a gift of the TCD to Lillian Steen.

Defendants argue a gift was made on September 23, 1975, when Carl authorized reissue of the certificate in his and Lillian Steen's name. The notation—"For L E Steen only"—on the envelope containing the certificate, they contend, is a clear indication the ward intended a gift to Lillian. They further contend the form of the certificate establishes a donative intent.

■ The certificate on its face established joint ownership and the duties and obligations between the named payees and the issuing bank. It required the bank to pay over the funds to either payee. This, however, does not necessarily determine the intent of the joint payees as to their respective interest in the funds underlying the certificate. The court must resort to extrinsic evidence to determine what the parties intended. *Greenwood v. Beeson,* 253 Or 318, 454 P2d 633 (1969); *Holbrook v. Hendricks' Estate, supra.* In *Greenwood v. Beeson, supra,* we held where all of the funds deposited in a joint account were deposited by only one of the signatories, the other signatory is to be deemed a trustee of the funds for the depositor's benefit unless the intent to create some other legal relationship is proven. 253 Or at 324. This principle would apply with equal force to a Time Certificate of Deposit. The certificate here in issue was purchased solely from the funds of Carl Johnson.

In determining if the requisite donative intent was present we examine the circumstances surrounding the transaction. During the ward's incapacitation Lillian Steen was assisting him in his financial affairs. To facilitate handling of these matters she was included as a joint signatory on his checking and savings accounts and was given authority to enter his safety deposit box. There is no contention she acquired sole ownership as a gift of the funds in these accounts or the contents of the safety deposit box by this fact alone. The reissue of the TCD in her and the ward's name is consistent with the obligation she had assumed to help him with his finances.

The explanation to Carl Johnson by the bank officer that Lillian "* * * would have just as much right to cash that or do whatever she would please with it as he would" is not tantamount to saying he was making a gift to Lillian Steen. This says no more than as far as the bank was concerned Lillian Steen could cash the certificate without his signature. This again is consistent with their prior dealings respecting his checking and savings accounts.

The certificate was changed at the instance and instruction of Lillian Steen not Carl Johnson. She never explained to him her purpose in having the certificate reissued. He was thus never aware that she considered the TCD to be a gift or that she intended to cash it and treat the funds as her own.

In his deposition and in the letter of December 1, 1975, to Lillian Steen, the ward emphatically denied he intended to make an *inter vivos* gift of the certificate. Defendants argue this evidence is immaterial respecting his earlier intent; they cite *Manning v. U.S. Nat. Bank, supra.* In that case we stated the intent of the alleged donor subsequent to the purported gift was not material. We also stated that evidence of the alleged donor's conduct after the date of the purported gift merits consideration and is relevant as it bears on the donor's intent at the time of the alleged gift. The

testimony of the ward in his deposition and his statements in the letter do not establish a subsequent intent but are relevant and material to his intent on September 23, when the certificate was reissued. This evidence should be considered along with the claimed donee's testimony concerning this event. We find the evidence material and persuasive as to the ward's intent. This expression of intent is consistent with the relationship between the ward and Lillian Steen respecting his finances.

■■ Defendants place considerable emphasis on the notation—"For L E Steen only"—on the envelope. Carl Johnson testified in his deposition that this was to take effect "on judgment day" and that everything was to pass by his will. This is an apparent reference to a testamentary gift. It is unnecessary to decide in this proceeding if this notation is sufficient for a testamentary transfer of the certificate. An attempted testamentary transfer is inconsistent with a present *inter vivos* gift. At most the evidence is equivocal as to whether he intended by the notation to make a present or testamentary gift.

We conclude defendants have failed to establish an *inter vivos* gift was made to Lillian Steen.

### TRANSFER FROM EQUITY TO LAW

■■ After the court determined that no gift had been made, defendant Lillian Steen moved to transfer the matter from equity to law to resolve the remaining issue of an accounting and the appropriate remedy. Denial of this motion is assigned as error. Defendant's argument is based on the general rule that equity is not proper if there is an adequate remedy in law. She contends that if the money was improperly appropriated the law remedies of conversion or money had and received are adequate. The complaint sought an accounting, constructive trust, an equitable lien and a judgment. These are all matters cognizable in equity. *See Dennison v. Doreen,* 281 Or 89, 573 P2d 1242

[ 371 ]

(1978); *Lane County Escrow v. Smith, Coe,* 277 Or 273, 560 P2d 608 (1977); *Flaherty v. Bookhultz et al,* 207 Or 462, 291 P2d 221, 297 P2d 856 (1956). The motion was properly denied.

## APPROPRIATE REMEDY

 Finally, defendants Donald and Elizabeth Steen assign as error the portion of the decree granting plaintiff a money judgment against them for the funds expended but not traceable to an identifiable product. They do not challenge the other relief granted in the decree. Their argument is that since they are innocent transferees of the funds the rule of law set out in the Restatement of Restitution should apply. The Restatement, § 204 (1937), provides:

> "Where a person receives the title to property of which another has the beneficial interest without notice of the other's interest but without paying value, and being still without such notice exchanges it for other property, he is under a duty either
>
> "(a) to surrender the property which he acquired in exchange, or, at his option,
>
> "(b) to pay the value of the property which he originally received, the property which he acquired in exchange being subject to an equitable lien for such payment." Restatement of Restitution, § 204, at 831-32.

They argue, based upon the Restatement, that the money judgment is a cumulative remedy which is not available at plaintiff's option. Defendants Donald and Elizabeth Steen do not contend that the plaintiff is foreclosed from restitution. Even an innocent transferee where no value is given for the transfer is liable to make restitution. *See Nusshold v. Kruschke,* 176 Or 697, 159 P2d 819 (1945). In allowing restitution the equity court may fashion an appropriate remedy under the circumstances. The misappropriated funds reflected in the money judgment portion of the decree had been expended by Donald and Elizabeth Steen for their own benefit. The funds were not traceable to any asset possessed by these two defendants and thus there

was nothing upon which an equitable lien or constructive trust could be imposed. The only effective remedy was a judgment for the untraceable funds.

■ In *Nusshold v. Kruschke, supra,* we affirmed a money judgment to enforce a decree of restitution against an innocent transferee. We noted the funds had been expended by the transferee and could not be traced. The Restatement principle set forth above does not dictate a contrary result. The transferees who are unjustly enriched to the detriment of the plaintiff cannot defeat the equity powers of the court by their own disposition of the misappropriated funds even though innocently done.

The judgment is not cumulative since it only requires payment of the balance of the funds not restored by other portions of the decree. Under the circumstances revealed in this record it is a proper remedy.

The decree is affirmed.