Argued June 8, affirmed as modified September 12, 1978

SAUTTER, *Appellant/Cross-Respondent,*
*v.*
COFFEY, *Respondent/Cross-Respondent,*
TUTTLE et al,
*Intervenors/Respondents/Cross-Appellants.*
(TC 124-694, SC 25096)
584 P2d 245

Tyler Marshall, of Bouneff, Muller & Marshall, Portland, argued the cause and filed briefs for Appellant.

Ridgway K. Foley, Jr., of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, argued the cause for Intervenors/Respondents/Cross-Appellants. With him on the briefs were Robert G. Simpson and Robert D. Dayton, Portland.

No appearance for Respondent/Cross-Respondent Coffey.

Before Denecke, Chief Justice, and Holman, Howell, and Lent, Justices.

HOLMAN, J.

## HOLMAN, J.

Plaintiff, widow of Ronald Sautter, brings this action of replevin, seeking to recover certain bank accounts, stocks, and a coin collection which are in the possession of defendant, the executor of the estate of Ronald Sautter. The residuary beneficiaries under Sautter's will have intervened and are the real parties in interest.

Plaintiff appeals from that part of the judgment which denied recovery to her of a checking account and the coin collection. Intervenors cross-appeal from the award to plaintiff of two savings accounts and some shares of corporate stock plus a dividend check therefrom. The case was tried to the court without a jury.

Plaintiff and Ronald Sautter married in 1962. They separated in 1971 but never divorced. At the time of separation they entered into a property settlement agreement. Despite the separation they remained friends, and decedent subsequently employed plaintiff part time and then full time in his business. He became terminally ill with cancer in September 1975, at which time he moved into plaintiff's apartment, alternating his stay there with hospitalization as his condition required. He left a will making plaintiff the beneficiary of a $150,000 trust fund and his brothers and sisters his residual beneficiaries.

Several years prior to his death, decedent had his attorney prepare a document entitled "Declaration and Acceptance of Gift," which listed his coin collection as of that time and declared it a gift to plaintiff. He had plaintiff sign the acceptance part of the document but he did not deliver it to her. At some unknown subsequent time he signed it and thereafter retained it in his desk. He stored the collection in a safe in his office and kept the keys to the safe in the drawer of his desk. Plaintiff had access to his desk and to the safe but only in connection with her work as an employee. According to plaintiff, at the time her husband had her sign the acceptance of the gift, he

[ 305 ]

said he was giving the collection to her. She also testified, as did other witnesses, that he subsequently said he had given it to her, the last occasion being shortly before his death. Subsequent to having plaintiff sign the acceptance, decedent continued to add to the collection and treated it no differently than he had previously. He was advised by his attorney that if a gift of the coin collection were actually made, a gift tax return would be required, but none was ever filed.

This is a law case; therefore, the issue is whether there is evidence to sustain the trial court's judgment. It is our conclusion that there is sufficient evidence to sustain its conclusion that there had been no gift of the coin collection. The trial court could have disbelieved the testimony of plaintiff and her witnesses concerning decedent's oral declarations that he had given it to her and decided that because he continued his use of the collection and because he never delivered the document of gift to her or filed a gift tax return, he had no intent to make a gift. By our conclusion we do not intend to indicate that a manual delivery of a document of gift or of property which is the subject of a gift is always a necessary prerequisite to the existence of a completed gift if, in fact, it is found that there was a present donative intent. See Note, 21 Or L Rev 190 (1942).

After decedent became ill and moved into plaintiff's apartment, decedent had plaintiff's name put on his checking account in the Bank of California. The provisions of the signature card had a box which had been marked for "Joint tenancy with right of survivorship." The signature card also had a box which was unmarked and which provided for "Tenants in common or joint tenants without right of survivorship." Thus, decedent was given a choice whether to give or not to give plaintiff a right of survivorship. When plaintiff was asked about the creation of the joint checking account, she testified that it was opened so she could write checks, when decedent was not up and around, to pay their living expenses, hers as well as

his. All funds in the account were contributed by decedent. At the time of his death, there was approximately $6,800 in the account. The ownership of this account was denied to plaintiff.

This decision is considerably more difficult. Intervenors depend upon the following language from *Greenwood v. Beeson,* 253 Or 318, 324, 454 P2d 633 (1969):

> "* * * However, when all of the funds in the account are deposited by only one of the signatories the recitation in the deposit agreement that the account is 'jointly owned' should not be treated as conclusively establishing the intent of the parties. To do so would be to give to the deposit agreement an effect which is normally not intended by those who open such accounts. Where the evidence shows that all of the funds in the account were deposited by only one of the signatories, the other signatory is to be deemed a trustee of the donor's power to withdraw from the account unless the intent to create some other legal relationship is proven."

Intervenors' dependency upon this language overlooks the facts of *Greenwood* and other language of the opinion. In that case there was no death nor issue of the right of survivorship. A judgment against the person whose name was added when a joint account was established was attempted to be satisfied out of the account by way of garnishment. The judgment debtor had contributed nothing to the account. In affirming the trial court's decision that the judgment could not be satisfied out of the account, the *Greenwood* court also used the following language, which appears immediately prior to the heretofore quoted language relied upon by intervenors:

> "Applied literally the language of the deposit agreement would create in the signatories in all cases a present concurrent ownership in the account. However, parties signing such an instrument ordinarily do not regard it as memorializing an agreement fixing their respective rights in the account in all of the various contingencies under which deposits are made and money is withdrawn. In signing such an agreement the parties do not freely contract as they do when they prepare their

own instrument. A deposit agreement is an adhesion contract prepared by the bank primarily to protect its own interests rather than to define the rights of the co-depositors *inter se.* Illustrative is the provision that withdrawals by one co-depositor will divest the other of his interest. *On the other hand, the provision for a right of survivorship would, in most instances, express the intent of the parties.* And where both parties make deposits into the account the provision of the deposit agreement that the account shall be 'jointly owned' probably would in most cases express their intent to create a present concurrent interest of some kind in the account. Evidence should be freely admissible to show what the parties intended with respect to the respective interests in the account. * * *." 253 Or at 323-24. (Emphasis added.)

If the only testimony was that the account was established so that plaintiff could pay decedent's bills while he was ill, there would be a basis for affirming the trial judge's decision. *Johnson v. Johnson,* 27 Or App 461, 556 P2d 969 (1976). However, no such construction can be put on her testimony. Decedent was giving her a present interest so she could pay her bills as well as his, and he could have accomplished this purpose without giving her a right of survivorship since the signature card specifically allowed him to make such a choice. There is no testimony indicating that decedent was so ill at the time of signing this signature card that his judgment or choice was impaired. In view of the choice given, there is no basis for saying that the provision for the right of survivorship was an adhesion contract for the protection of the bank's interest or that the payment of the living expenses of decedent and his wife was the sole purpose sought to be accomplished by the establishment of the account. Therefore, it is our opinion there there is no basis for the decision of the trial judge awarding the account to decedent's estate, and the account should have been awarded to plaintiff.[1]

---

[1] The legislature has subsequently passed a statute relative to the ownership of joint bank accounts upon the death of one of the parties. See ORS 708.616, Oregon Laws 1977, ch 555, § 4.

■ Intervenors argue that the provision made for plaintiff in decedent's will, the stormy marital history of decedent and plaintiff which resulted in their separation, and the property settlement agreement between them at the time of their separation, all furnish a basis for the trial judge's decision and that it should therefore be upheld. These matters were known to decedent at the time he was given the choice concerning ownership of the account following his death, and we believe they constitute an inadequate basis for the trial judge's decision. The checking account should have been awarded to plaintiff.

■ We now move to intervenors' cross-appeal. The first item for consideration is a joint savings account in the Oregon Mutual Savings Bank in excess of $18,000 which was awarded to plaintiff. This account was established in February 1972. There is no evidence that at that time decedent knew he was suffering from cancer. He was first hospitalized for cancer in the fall of 1975. The only testimony concerning the account is that of plaintiff to the effect that decedent came to her and told her he was opening a joint savings account for them. There is no evidence that it was done for decedent's convenience. Plaintiff neither contributed to nor withdrew from the account. Only one side of the signature card, entitled "Joint Savings Account and Agreement," is in evidence:

> "2. Deposits made to this joint account and any additions thereto made by either of the depositors, or on their behalf, shall become the property of such persons as joint tenants, and the deposits together with all dividends thereon, shall be held for the exclusive use of such persons and *may be paid* to either during the lifetime of both or *to the survivor after the death of one of them.* Such payment, and the receipt or acquittance of the one to whom payment is made, is a valid and sufficient release and discharge to the Bank for all payments [continued on reverse side of card]." (Emphasis added.)

There is, obviously, another side to the card, but we do not have the benefit of its contents. It is interesting to

note that no provision is made for a *right* of survivorship. The card merely says that the balance *may be paid* to the survivor by the bank. It must be assumed, however, in the absence of anything which indicates to the contrary, that the decedent knew that the contract with the bank provided that the bank would be absolved of responsibility upon his death by payment and that that is what would normally occur upon his death. In view of such knowledge and the absence of other evidence, the trial judge was justified in drawing the inference that decedent intended plaintiff to have the money upon his death. *Cf. Holbrook v. Hendricks' Estate,* 175 Or 159, 166, 152 P2d 573 (1944).

■ The next question on cross-appeal involves another savings account at Oregon Mutual Savings Bank which involves approximately $1,000. Again, plaintiff made no deposits to or withdrawals from this account. The signature card is entirely different from that for the savings account previously discussed even though both accounts are with the same bank. Intervenors contend that there was no intent to give plaintiff the account upon death because the box for joint ownership is not marked upon the signature card. This is of no consequence, however, because typed on the face of the card are the words, "Changed to a joint account," which can mean only "joint ownership account," since it is the only kind of joint account for which the signature card provides. The balance of the card defines "joint ownership account," and contains the language, "Upon death of any of the depositors, the entire balance of the account shall belong to the survivor or survivors. * * *."

Plaintiff's name was added to this account shortly prior to decedent's death while he was in the hospital. From the circumstances of decedent's subscription of the signature card it is not possible to draw an inference that he gave any consideration to a right of survivorship. His signature is not legible and his condition was obviously quite debilitated. Two persons who were present, his attorney and a friend, to whom

he had previously granted his power of attorney, apparently thought it was necessary under the circumstances to sign the document for him since they did so sign. Their testimony, as well as plaintiff's, is capable only of the construction that decedent or his attorneys in fact, or all three, thought it best to have the money available for eventualities because decedent was dying. There is no evidence of any consideration given by him or by those who were signing for him regarding the ownership of the funds within the account upon decedent's death. There was no choice afforded by the signature card which would have accomplished the object of the transfer while not providing for a right of survivorship. Under such circumstances we believe there is no evidence from which the trial court could find that plaintiff owned the account upon decedent's death. *Johnson v. Johnson, supra.* This savings account is, therefore, the property of the estate.

■ This leaves the last issue on cross-appeal, which is the ownership of some shares of stock and a dividend check, the total value being in excess of $6,500. No information is available concerning how these stocks were held other than that they were in the names of plaintiff and decedent as joint tenants. There is no indication whether the stock certificates, which are not in evidence, provided for the right of survivorship. No one testified as to the reason why decedent placed the stock certificates in the joint name of himself and his wife. Plaintiff testified only that she was aware he had and that from time to time he gave her dividend checks from the stock. It is regrettable that the court is deprived of information readily available but unproduced, which might well have decided the issue with certainty.

In 1975 the legislature authorized the creation of joint tenancies in personal property, an incident of which is the right of survivorship. ORS 91.355; Oregon Laws 1975, ch 501, § 1. The stock in question, however, was placed in the names of decedent and plaintiff as joint tenants prior to the enactment of the statute.

Until the passage of ORS 91.355, the law of joint tenancy was governed by ORS 93.180, which provided:

> "Every conveyance or devise of lands, or interest therein, made to two or more persons, other than to executors and trustees, as such, creates a tenancy in common unless it is expressly declared in the conveyance or devise that the grantees or devisees take the lands as joint tenants. Joint tenancy is abolished and all persons having an undivided interest in real property are to be deemed and considered tenants in common."

Although the statute speaks in terms of real property, it was construed to apply to personal property as well. *Stout v. Van Zante,* 109 Or 430, 219 P 804, 220 P 414 (1923). In *Erickson v. Erickson,* 167 Or 1, 15, 115 P2d 172 (1941), the statute (two statutes then, OCLA 70.108 and 70.205) was construed to mean that owners of undivided interests are to be considered tenants in common except where the right of survivorship is expressly declared. *Erickson* involved interests in real property. In *Manning v. U. S. Nat. Bank,* 174 Or 118, 148 P2d 255, 153 ALR 922 (1944), the situation involved stock transferred by a husband into the joint names of himself and his wife. The facts are substantially the same as the present case except that words of survivorship were used so the court upheld the survivorship clause and did not have to decide our present question. The court said:

> "* * * Whatever may be the rule in other cases in which a conveyancer employs only such words as 'joint owners' or 'joint tenants' without adding 'and to the survivor' or equivalent words, there can be no question in the case at bar for here the donor employed express words which unequivocally described the right of survivorship and he thereby avoided the constructional preference in favor of a tenancy in common. We need not decide whether the words 'joint owners' or 'joint tenants' are words of art which, when employed without more in a conveyance, would be deemed to have 'expressly declared' that the right of survivorship should exist, for that question is not before us, but see *In re Hutchison's Estate* [120 Ohio St. 542, 166 N.E. 687], and *State Bank*

*and Trust Co. v. Nolan,* 103 Conn. 308, 130 A. 483." 174 Or at 129-30.

The two cases mentioned in the quotation hold that, with statutory enactments similar to Oregon's enactment, express words of survivorship must be present to overcome the preference for tenancies in common, even if the words "joint tenancy" are used. The sum of the Oregon cases would indicate that at the time the present transfers of stock were made to "joint tenants," the designation was not sufficient to establish a right of survivorship, since the right was not expressly declared, and that in the absence of such a declaration, ORS 93.180 prevented the interest therein from arising. As a result, decedent and his wife each owned an undivided one-half, and his estate succeeded to his one-half interest upon his death.

The judgment of the trial court is affirmed as modified by this opinion.